[No. 4534.]

## BALLARD V. GOLOB ET AL.

34  417
f34  430
f34  431

1.  Mining Claims—Cotenants—Failure to Contribute to Assess-
     ment—Forfeiture—Notice.

A proceeding to forfeit the interest of a co-owner in a min-
ing claim for failure to contribute his portion of the expenses
for the required annual assessment work is ineffectual to divest
such co-owner of his interest where his name does not appear
in the affidavits and notice of forfeiture.

2.  Mining Claims—Cotenants—Patents—Trusts and Trustees.

Where certain co-owners of a mining claim procured a
patent to the entire claim in their names, excluding therefrom
the name of another co-owner, they took title to the interest of
the excluded co-owner in trust for him and became trustees for
him to the extent of his interest.

3.  Mining Claims—Cotenants—Payment of Taxes.

The payment of taxes on a mining claim by one or more
co-owners is a payment for all the co-owners.

4.  Limitation—Payment of Taxes—Claim and Color of Title.

To support a title by limitation under section 2923 or 2924,
Mills' Ann. Stats., it must be shown that the taxes have been
paid for a period of five consecutive years by persons having
or claiming the property under color of title. It is not suffi-
cient if the taxes were paid any one of the five years by a
person who at the time made no claim to the property under
color of title.

5.  Limitation — Trusts and Trustees — Cotenants — Breach of
     Trust—Notice.

Where certain of the co-owners of a mining claim procured
in their names a patent to the entire claim, excluding there-
from the name of another co-owner and afterwards denied the
interest of such co-owner, an action by the excluded owner
against the patentees for breach of their trust could be brought
at any time within five years from the time the cause of action
accrued, and the cause of action did not accrue until the trust
was repudiated by said patentees and the knowledge of such
repudiation was brought home to such excluded co-owner.

6.  Laches—Pleading—Practice.

When laches is interposed as a defense to an action it
should be raised by answer, and not by demurrer.

27

*Appeal from the District Court of Lake County:*
*Hon. Frank W. Owers, Judge.*

Mr. JOHN M. WALDRON and Mr. R. D. THOMPSON,
for appellant.

Messrs. THOMAS, BRYANT & LEE and Messrs.
PHELPS & PENDERY, for appellees.

Mr. JUSTICE STEELE delivered the opinion of the
court.

Action was brought by Ballard in the district
court to recover a one-sixth interest in the Ballard
lode, situated in Lake county, for an accounting, and
for his proportionate share of the net profits realized
from the operation of the said property as a mine.
The complaint was filed in the month of June, 1901;
demurrer was interposed and sustained; judgment
rendered dismissing the action; and the plaintiff
has appealed. We shall set forth the allegations of
the complaint in substance only. The plaintiff says
that in the month of March, 1879, he, W. D. Larre-
more and N. J. Ballard located the Ballard lode, each
of said locators having a one-third interest therein;
that the location certificate was duly recorded; that
the plaintiff, in the year 1880, executed a deed for a
one-third interest in said lode to certain persons who,
under contract with him, had sunk the shaft on the
lode to a depth of about two hundred feet; that prior
to the execution of this deed he had acquired by pur-
chase from his brother, Newton J. Ballard, the one-
third interest of said Newton J. Ballard in said lode;
that prior thereto Larremore had conveyed his inter-
est in said lode to one Jasper Moon, and that said
Moon had conveyed an undivided one-sixth interest
in said lode to one Charles F. Gilbert; that prior to
the making of the last mentioned deed from Moon to
Gilbert he and Jasper Moon, being the sole owners of

said Ballard lode, made application in the United States land office at Leadville for a patent, said application being in the usual form; that shortly after the making of said application he conveyed a one-sixth interest in said Ballard lode to one Charles F. Gilbert, and that he, prior to the application aforesaid, had contributed his proportionate share of what was then estimated would be the necessary expense of making such entry; that in the year 1881 he performed his proportion of the annual labor upon said lode for the year 1881; that he left Leadville in the early part of 1882, and ever since said time has worked in various places in Colorado and New Mexico, and has not been in Leadville or vicinity; that in the year 1880 Jasper Moon died testate, leaving his property to one Charity Moon, otherwise known as C. P. Moon, his widow; that afterwards, on November 27, 1882, the said C. P. Moon filed a pretended proof of forfeiture in the United States land office at Leadville, Colorado, wherein and whereby she made affidavit that after January 1, 1881, and before December 31, 1881, she had laid out and expended one hundred dollars in actual labor and improvements upon said Ballard lode, and that thereafter she had made demand by publication upon Charles Walker and one A. Ballard, co-owners of said lode, to pay their portion of said expenditures, accompanying said affidavit with a copy of said notice of forfeiture and proof of publication thereof duly sworn to by the editor of the newspaper in which said notice of forfeiture appeared.

The affidavits and notice of forfeiture are set out at length in the complaint, and show that the notice of forfeiture is directed "To Charles Walker, A. Ballard, or Whom It May Concern;" that it was published for ninety consecutive times in the Leadville Daily Herald, that the first publication was on the

18th day of April, 1882, and that the last publication was on the 7th day of July, 1882.

He furthermore states that the labor performed in 1881 upon said lode in addition to that performed by himself was performed, if at all, at the instance of Wilmot, Kopplemeyer and Walters, hereafter mentioned, and not at the instance of C. P. Moon. He furthermore alleges that the affidavit of the editor of said newspaper is not true, in that said notice was not published for the period of ninety days, as stated therein; and that at no time subsequent to October 24, 1879, did the plaintiff by any conveyance transfer or convey a one-sixth interest in said Ballard lode, which he then and ever since has owned, and that no proceeding or judgment, tax sale or any other adverse proceeding of any kind has been had or commenced by virtue of which this plaintiff has been divested of his one-sixth interest in said lode; that afterwards, on October 12, 1885, under said proceedings for patent based upon said application of Jasper Moon and himself, a United States patent for said Ballard lode was issued to C. P. Moon, L. H. Wilmot, A. W. Gilbert and H. G. Kopplemeyer; that he did not know until January, 1899, that his name did not appear as one of the entrymen for said patent, and did not know until then that his name had been omitted from said patent; that said patent was delivered to L. H. Wilmot at Deerfield, Illinois, and that it was not recorded in the recorder's office of Lake county until December 24, 1898. He further alleges that after the year 1881 and up to the month of August, 1897, none of plaintiff's co-owners in said Ballard lode were in actual possession thereof or any part thereof, or performed any labor or expended any money upon its improvement or development; that the only taxes paid on said Ballard lode since said application for patent

were the taxes for the year 1888, paid by John Moon, the taxes for the years 1889, 1890, 1891 and 1892, paid by L. H. Wilmot, and the taxes for the year 1893, paid by W. J. Moon; that for the years 1894 and 1895 the said property was sold for taxes, and that in the year 1896 and the year 1897 the taxes were paid by L. H. Wilmot, and the years 1898 and 1899 the taxes were paid by Joseph Golob; that in the year 1897 persons claiming to be the owners of said property made a lease to Turnbull and Golob to said property for the term of four years, and that on January 3, 1898, said Turnbull and Golob entered into the actual possession of said property and continued in the possession of said property until about December 1, 1898, when they received a deed from Wilmot and Köpplemeyer for a five-sixths interest in said Ballard lode. He sets forth other conveyances showing that William J. Moon, Winona Simons, Elvie L. Ould, A. W. Gilbert and Kate Jones were grantees of certain interests in said lode. He further alleges that upon learning, in January, 1899, that a patent had been issued and that his name had been omitted therefrom, he set about learning what he could as to how this omission of his name had occurred, but being in very moderate circumstances, it was not until about the month of September, 1900, that he was able to employ an attorney who was willing to give the matter proper attention; that this attorney was not able to make a trip to Leadville to investigate the matter until about the month of December, 1900; that his attorney went to Leadville in December, 1900, and ascertained that considerable of the needed information had to be obtained elsewhere, and some considerable correspondence had to be carried on, and it was not until the month of May, 1901, that his attorney had obtained sufficient information to advise him as to his rights; that in

the month of May, 1901, his attorney having made careful investigation, thereupon advised this plaintiff that plaintiff was entitled to his said one-sixth interest in said Ballard lode, notwithstanding the issuance of said patent and the several transfers that have been made to said Ballard lode; that thereupon plaintiff's attorney sought out and advised Peter B. Turnbull as to the claims and rights of the plaintiff to said one-sixth interest; that a reasonable time has elapsed for said Turnbull to make answer, but no answer has been received from him by plaintiff or plaintiff's attorney; that plaintiff never saw said publication of notice of forfeiture at the time it was being published, and did not know it had been made until many years thereafter; that at the time said forfeiture proceedings were commenced plaintiff was the owner of a one-sixth interest in the Ballard lode, and that Charles Walker, George C. Stephens and Isaac Gibson were the owners of record of a one-ninth interest each in said Ballard lode; wherefore he demands judgment for a one-sixth interest in the said lode, for an accounting and for his one-sixth interest of the net value of the ore extracted.

Separate demurrers were filed. They all set forth the same grounds, and are as follows: ''First, that defendants were purchasers for value and without notice. Second, that defendants held and occupied the premises under claim and color of title and paid taxes for thirteen years. Third, that plaintiff's cause of action accrued in 1882, and is barred by the five years' statute. Fourth, that the cause of action, which is to enforce a trust, is barred by the five years' statute. Fifth, laches and negligence of the plaintiff.''

The proceedings instituted did not have the effect of divesting plaintiff of his interest in the

Ballard lode. His name does not appear in the notice and affidavits. The law (sec. 2324, Rev. Stats. U. S.) requires that the co-owner who has performed the labor or made the improvements give the delinquent co-owner personal notice in writing or by publication for the period of ninety days that his interest will become the property of his co-owner if he fails or refuses to contribute his share of the expenses incurred. The notice given does not meet the requirements of the law, and it must be held to be invalid as far as the plaintiff, Chapman Ballard, is concerned. The plaintiff, having been one of the original locators and having succeeded to the interest of N. J. Ballard by deed of conveyance, was entitled to have patent issued to him for such interest in the lode as he had not theretofore conveyed; and when the patentees procured a patent from the government for the entire lode, they took the interest that the plaintiff had in trust for him. At the time the patent was issued Ballard owned an undivided one-sixth interest in the lode, and he was not divested of this interest by the act of the federal officials in issuing patent to others, but the patentees took title subject to Ballard's rights and became trustees for him to the extent of his interest.

It was said by Mr. Justice Brown in *Turner v. Sawyer,* 150 U. S., at page 586: "It is well settled that cotenants stand in a certain relation to each other of mutual trust and confidence; that neither will be permitted to act in hostility to the other in reference to the joint estate; and that a distinct title acquired by one will inure to the benefit of all. A relaxation of this rule has been sometimes admitted in certain cases of tenants in common who claim under different conveyances and through different grantors. However that may be, such cases have no application to the one under consideration, where-

in a tenant in common proceeds surreptitiously, in disregard of the rights of his cotenants, to acquire a title to which he must have known, if he had made a careful examination of the facts, he had no shadow of right. * * * A title thus acquired, the patentee holds in trust for the true owner, and this court has repeatedly held that a bill in equity will lie to enforce such trust.''

And this court has held, following the rule announced by Mr. Justice Brown, that ''Obtaining patent from the government for mineral land, by a cotenant, in his own name, is not the purchase of an outstanding adverse title by the cotenant, as that expression is ordinarily used; but rather the perfection of the common title, which inures to the benefit of the cotenants of the patentee, to which the above rule of cotenancy applies, for the reason that cotenants stand in that relation of mutual trust and confidence toward each other that the title thus acquired by patent, the patentee holds as trustee for his co-owners in the premises.''—*Mills v. Hart*, 24 Colo. 508.

Moon, Gilbert, Wilmot and Kopplemeyer were cotenants of Ballard; they each held undivided interests in the property; and when they took title from the government in their own name they took a one-sixth interest therein in trust for Ballard. This proposition is not open to dispute, but the defendants claim in their argument upon the demurrer that the complaint shows that they have been in the possession of the property under claim and color of title made in good faith, and that they have paid taxes thereon for the period of five years, and under the statute of this state they should be adjudged to be the owners of the said property, and that even though they have not been in the actual possession of the premises, that another statute requires that

they be adjudged to be the owners of the property because the land was vacant and unoccupied land, and they, under claim and color of title made in good faith, have paid for the period of five years the taxes assessed against the property. These two sections, Nos. 2923 and 2924 respectively of Mills' Annotated Statutes, were passed in the year 1874. They have since been repealed, and the law concerning the subject is found in the Laws of 1893, at page 327. If the forfeiture proceedings did not divest Ballard of his interest in the property, and if obtaining a patent cannot be regarded as an adverse proceeding as between co-owners, then the payment of taxes by the patentees must be regarded as payment for Ballard.

Again, the complaint does not show that the taxes were paid for five successive years by a "person in the peaceable and undisputed possession" of the property, "under claim and color of title," as required by section 2923; nor does it appear from the complaint that the taxes were paid for five successive years by "a person having color of title," as provided by section 2924. The complaint, on the contrary, shows that the taxes first paid were those for the year 1888 and that they were paid by John Moon; that the taxes for the following four years were paid by L. H. Wilmot; that the taxes for the year 1893 were paid by W. J. Moon, and that the property was sold for the taxes of 1894 and 1895. There is no allegation in the complaint that John Moon ever owned or claimed an interest in the property, and according to the averments of the complaint W. J. Moon did not acquire an interest therein until the year 1895. Therefore, even though we assume that sections 2923 and 2924 apply to the interests in mining claims acquired through forfeiture procedure under the provisions of the federal statute, the complaint is not demurrable, because it does not appear

therefrom that the taxes have been paid for the period of five years by persons having or claiming the property under color of title.

But it is said that this is an action brought for relief upon the ground of fraud, and that section 2911 of the statutes requires that such complaints shall be filed within three years after discovery by the aggrieved party of the facts constituting such fraud, and not afterwards. This court, in the case of *Morgan v. King*, 27 Colo. 559, speaking of sections 2911 and 2912 of the statutes, says: "These two sections must be construed together, and when so read it is evident that where the relation of trustee and *cestui que trust* exists it was the intention of the legislature to give to the latter the right to bring an action against the former which involved a trust at any time within five years after his right to do so accrued; but in other cases based upon fraud, where the subject-matter of the action did not involve a trust, the action must be brought within three years. In brief, the former section applies to frauds perpetrated by those not bearing a fiduciary relation to the party defrauded, the latter to cases where the trust relation exists between the parties to the action."

Under this decision, we must hold that section 2911 is not applicable to this case. But it is claimed that if section 2911 does not apply, that section 2912 does. This latter section provides that "Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after." We do not think that it appears from the complaint that this section is applicable. The trust, such as occurred by the taking of a patent by one co-owner in his own name, is an express

trust and a continuing one, and an action for breach of the trust does not accrue until the trust is repudiated and the knowledge of such repudiation brought home to the *cestui que trust*. It is alleged in the complaint that plaintiff did not know that his name was omitted from the patent until the year 1899. This is less than five years before the bringing of the suit. It is said that the cause of action accrued long prior to the year 1899; that when the interest was conveyed that it was a repudiation of the trust and that the plaintiff should have brought his action within five years after such repudiation. The entire interest was not conveyed until some time in the year 1897, and five years had not elapsed between the time that those cotenants who held the interest of Ballard in trust for him undertook to convey it and the time of the bringing of the suit. But the authorities are very clear that not only must there be a repudiation of the trust, but that the fact of such repudiation must be brought home to the one for whom the property is held in trust. Thus, in *French v. Woodruff*, 25 Colo. 339, it is held that "No right of action accrues unless the trust is repudiated in some way and knowledge thereof brought home to the *cestui que trust*." So that, as far as the complaint is concerned, there is nothing therein contained which shows that the action was barred by the statute of limitations.

It is urged that notwithstanding the fact that the action is not barred by the statute of limitations, that the plaintiff has been guilty of such laches and negligence, and that the same appears from the complaint, that a court of equity for this reason should not entertain his complaint. A great number of authorities have been cited on this branch of the case, including the case of *Patterson v. Hewitt*, 195 U. S. 309, in which case Mr. Justice Brown says:

"It thus appears that the right of action accrued to the appellants in April, 1885, and that the suit was not begun until eight years thereafter—in 1893. * * * There is no doubt from the findings that appellants had no share in the subsequent development of the mine or the discovery of the ore in 1890, and that it was through the efforts and perseverance of the defendants and the aid they received from Fergusson that they were put in possession of this valuable property. If appellants had expected a share in this property they should either have brought a bill promptly to enforce their rights, or at least contributed their proportionate share to the subsequent work and labor, and the expenses then incurred. To award them now a deed to their original interest in the property would be greatly unjust to the defendants, through whose exertions the value of the property was discovered and the mine put upon a paying basis. * * * There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A location which to-day may have no salable value may in a month become worth its millions. Years may be spent in working such property apparently to no purpose, when suddenly a mass of rich ore may be discovered, from which an immense fortune is realized. Under such circumstances, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced."

The case was brought from New Mexico, and in that territory there is a statute to the effect that no action for the recovery of lands shall be commenced after a lapse of ten years. The action was brought within the ten years. The title was held in trust by one of the owners under certain conditions for the

benefit of all the owners. The trust was repudiated in the year 1885, when a conveyance was demanded of the trustee and he refused to convey. After the demand for a conveyance the property was worked and a valuable mine was developed. We are not prepared to say that the plaintiff may not have been guilty of such laches in this case after he knew that his name was omitted from the patent as to preclude a recovery here. In the case of *Van Wagenen v. Carpenter*, 27 Colo. 444, it is said that a man cannot lose a title which is evidenced by record by a mere silence. Moreover, it has repeatedly been held by this court that when laches is interposed as a defense to an action that the proper procedure is to raise it by answer. This is upon the ground that the party against whom laches is charged shall have an opportunity to explain, and while a very great number of authorities hold when such facts appear in a complaint that it may be taken advantage of by demurrer, we are committed to the other doctrine.

For the reasons given, the judgment is reversed.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMPBELL concur.