No. 16,991.

J. K. MULLEN INVESTMENT CO. *v.* TOWN OF ARVADA.

(261 P. [2d] 714)

Decided July 27, 1953.   Rehearing denied October 5, 1953.

Mr. MYLES P. TALLMADGE, for plaintiff in error.

Mr. EMORY L. O'CONNELL, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

In the year 1921, the Town of Arvada, a Colorado municipal corporation in Jefferson county, organized and created a paving district within its limits and installed the paving improvements as contemplated, and to defray the cost and expenses thereof issued its paving district negotiable coupon bonds in the principal sum of $22,-173.16, dated October 1, 1921, due October 1, 1943, subject however, to call and payment any time prior to maturity from funds available for that purpose.

On January 25, 1922, the town board of trustees adopted, and the mayor approved, an ordinance which was duly published and made a law of said town, levying special assessments against the parcels of real estate within the district for the purpose of paying the bonds. The total amount of such assessments was in the sum of $24,169.17.

Thereafter, the town collected and received substantially all of the proceeds of the special assessments so levied, together with interest on the unpaid installments thereof and penalties, amounting to $30,358.94, minus collection charges, which was an amount sufficient to pay all of said bonds, together with the interest on the bonds to the maturity date. However, as custodian of said funds, and as trustee for the bondholders, the town failed and neglected to pay said bonds at times and in the manner provided by chapter 151, Session Laws of Colorado, 1899, under which said bonds were issued, and diverted said funds for other purposes, with the result that the bonds numbered 29 to 36 inclusive, and 40 to 44 inclusive, in the denomination of $500.00 each, amounting to $6500.00, together with interest, remain unpaid. The holder of said bonds, The J. K. Mullen Investment Company, plaintiff in error, claims the amount due at the time of the filing of this action was $6,755.00 and interest thereon, for which it filed its complaint on the 13th day of August, 1949, alleging that plaintiff, or its predecessor in interest, had no knowledge or information of the general matters concerning the true condition of the status

of these special assessment proceeds until a few days before the filing of the complaint. The status of the somewhat incomplete records of the town as to the receipt by the town of the assessments, interest and penalties is disclosed by plaintiff's exhibit No. 2 and the town's exhibit No. 50. These exhibits disclose, and it is admitted, that the town paid only $14,000 of the bonds issued.

By a bill of particulars furnished by the town, it is shown that the town was unable to state the exact amount received during the years 1923 and 1924, because the assessment book did not correspond with the receipt book that was used, and that the records of the town for 1925 and to May 26, 1926 could not be found; however, the books of the office of county treasurer reveal the exact amount of the assessments received by the town, and these amounts are substantially the same in both exhibits, that of plaintiff and of the town. It is fairly well established by these exhibits that there was an admitted shortage in the special assessment fund in the sum of $2,009.56 on May 27, 1926, for which the town is unable to account and the trial court so found. The exhibits further demonstrate the neglect and failure of the town to call and pay bonds when it had on hand available and sufficient funds therefor, according to the mandate of the statute under which the bonds were issued.

Summarized, the town's defense is that the town had a right to withdraw $1,079.15 to reimburse it for advances made for the improvements; that the action was barred by statutes of limitation, as well as by laches, estoppel and acquiescence, as is shown by the separate defenses set out in an amended answer.

Trial was had to the court and on February 11, 1952, the court rendered its opinion and memorandum for findings and deccree in which it stated as follows: "In this case there was testimony showing that the Arvada Fire Department holds a $1500 face value of bonds with unpaid coupons attached, of the Improvement District

No. 1, that is the same sort of bonds as held by the plaintiff. However, the Arvada Fire Department is not a party to the suit and we do not know anything we can do about it."

The then town attorney who represented the town at the trial, on March 14, 1952, withdrew his appearance for the town and filed a petition to intervene on behalf of the Firemen's Pension Fund of the town and filed a complaint for such fund. This application for intervention was resisted on the ground that it was not "timely." On April 14, 1952, a hearing was had on objections to plaintiff's proposed findings and on the petition to intervene. On April 24, 1952, the trial court entered its memorandum to attorneys, in part as follows: "We are not acting on the petition for intervention at this time and in our opinion it should not be necessary for the Firemen's Pension Fund to have to intervene, because it doesn't seem to the Court there can be much question as to the fact that they do have three bonds, that these bonds are outstanding and unpaid and are properly payable out of the fund."

Without granting the petition for intervention, the trial court entered its final decree on this subject, finding that the defendant town should augment the bond fund in the amount of $2,009.56 with interest, the amount of the admitted shortage, and that such an amount, together with $50.25, the amount then in the fund, should be prorated with the trustees of the Firemen's Pension Fund. The court then made the further finding that to find any deficiency in the bond fund or default on the part of defendant of a sum greater than $2009.56 and interest would be speculative; that defendant was within its rights reimbursing itself in the sum of $1079.15 for advancements; and judgment was entered accordingly on May 17, 1952.

Plaintiff in error specifies as reasons for reversal that the defendant town is liable to plaintiff in the full amount of its bonds and interest in controversy because

of the admitted shortage and of the failure to call and pay bonds when funds were available under the mandatory provisions of the statute; that the trial court erred in concluding that a finding of any deficiency in an amount greater than the admitted shortage would be speculative; that it was error to hold that the town was within its rights in reimbursing itself in the sum of $1079.15 for advancements; that it was error to hold that any recovery should be prorated by the plaintiff and the Firemen's Pension Fund, because such fund was not a part of the action; that the petition to intervene was not timely; that the court did not specially grant the petition for intervention; and finally, that the statutes of limitation were not applicable because of the trust relationship between the town and its bondholders, because there was no repudiation of the trust.

Section 37, chapter 151, S. L. 1899, supra, provides, in part: "Whenever considered prudent by the city or town treasurer, he may, and whenever funds may be in his hands to the credit of any improvement exceeding six months' interest on the unpaid principal, *he shall,* by advertisement for five days in some such newspaper, call in a suitable number of bonds or warrants of the same district for payment; * * *." (Italics supplied.) This particular statute has been considered by this court on several occasions: *Wangnild v. Haxtun,* 106 Colo. 180, 103 P.(2d) 474; *Haxtun v. Wangnild,* 109 Colo. 518, 127 P.(2d) 328; *Rising v. Hoffman,* 116 Colo. 63, 179 P.(2d) 430; and *Sterling v. Bank,* 116 Colo. 369, 181 P.(2d) 361. It has been uniformly held in our cases that under this Local Improvement Act, the town is trustee for the bondholders of the funds received from special assessments, and that the statute clearly defines the duties of the treasurer. This statute is unequivocal and mandatory and further interpretation is patently unnecessary. A failure of the trustee to comply with the clear mandatory direction of the statute results in a liability of the town, and that liability stands against all statutes of

limitation unless the trustee has repudiated his trust.

The rule concerning the repudiation of a trust applies generally to all trusts, however, we believe there is little if any, place for repudiation to attach in the case of a trust involving the funds paid under special assessments by property owners to the town treasurer, where the treasurer as such trustee is controlled wholly by statutory provisions. In all events, the trustee is accountable to the bondholders as "cestius que trustent." In this case it is claimed and alleged by the town that there was a repudiation of the trust. On this question the trial court ruled correctly, and adversely to the town. This ruling is supported by the fact made apparent in the record that there was no repudiation by the town, even if attempted, because the town continued to receive money from assessments in each of the years 1922 to 1942 inclusive, and also in 1946, which, of course, annihilates any claim of the repudiation in the year 1940. The bonds did not become due until October, 1943. The claim of repudiation is grounded solely on the proposition that in 1940 the town officials recognized the town's liability, due to a shortage, and desired to do something about it before the due date of the bonds and discussed the matter with a representative of plaintiff in error, whose statement is an exhibit of defendant town, and the material parts of which are as follows:

"Few, if any records were kept by the City Clerk in Arvada prior to 1926, but it would appear that money paid into the District by the taxpayers during the period from 1921 to 1926, was used for general town purposes and not for calling bonds of Paving District No. 1."

"The Mayor and the three councilmen, with whom I met seemed to be perfectly willing to work out the situation to the end that the present bondholders be paid in full for Paving District No. 1 bonds."

"The officials with whom I met desire to go into the matter themselves and discuss the entire situation further, and get in touch with me at a later date, at

which time they would try to formulate a plan for the payment of the bonds. In my opinion, the town officials are not debt-dodgers; they freely admit the obligation and I believe desire to keep the credit of Arvada absolutely good. The Town Attorney, however, would rather fight than get along and because of him we might have trouble in this matter."

After this event the town continued to receive money from assessments and to make payments on the bonds, and later, in September 1946, offered to compromise its obligation to plaintiff in error, and now holds $50.25 in its bond fund. There seems to be little dispute about the fact that about the year 1926, the town knew that $2009.56 was missing from the fund due to misapplication, diversion or abstraction. Regardless of any notice of a shortage that plaintiff might have had in 1940, it still had a right to assume that such shortage would be replaced before final maturity of all the bonds. We again say that when the trustee in this kind of a trust had sufficient money on hand at different times to call and pay the bonds and failed to do so, and the town had the benefit of the taxpayers' money for its other purposes, it is not good grace to come into our courts in an attempt to escape liability with a claim that it had repudiated its statutory duties and obligations.

To detail the items of receipt and expenditures over the period of years involved would unduly lengthen this opinion, and since there is little variance between the statements of both parties hereto as to these various amounts, and admission of receipt of a total amount more than sufficient to pay all bonds of the issue, we find that the record as to such matters clearly supports the trial court's finding as to the general liability of the town; however, we cannot affirm the findings and judgment of the trial court to the end that the town could reimburse itself in the sum of $1079.15; that the extent to which the fund may be augmented by the replacement of $2009.56, with interest, plus $50.25, the

amount on hand, be prorated with the trustees of the Firemen's Pension Fund; and finding that any deficiency in the bond fund, or default on the part of the town of a sum greater than $2009.56 would be speculative.

As to the speculative angle of the court's finding, we say, that under the circumstances of this case, in this kind of a trust, no speculation is necessary. If there was a shortage in the fund, wholly unaccounted for, and other parts of the fund diverted to other purposes of the town, then the amount of the unredeemed bonds, together with interest thereon, is the amount due under the town's liability, and in this instance, the judgment here should have been for the full amount of plaintiff's claim, and the judgment directing that the fund be prorated with the Firemen's Pension Fund is erroneous, because this is not a class action brought by plaintiff and all others similarly situated, and the pension fund was not a party to the suit and its untimely application to intervene was never passed upon. The claim of the Firemen's Pension Fund cannot be adjusted in this action, but is subject to determination in a separate suit.

■ Finally, the town treasurer as trustee was not dealing with funds of the town, but funds which belonged to the bondholders, and since the town shows, by its statement, receipt of the money, then the question that determines this case is: Was the money disbursed according to the requirements of the statute? Failure on the part of the trustee to redeem the bonds created a further interest obligation on its part which would accrue until the bonds were retired. As the record reveals, this accumulated liability for interest was far more than what was necessary to pay all items of expense for interest and principal on the bonds.

As to the judgment allowing the town to reimburse itself in the sum of $1079.15, it appears from the record that the items making up this amount are not anticipated in the preparation of the statement of the whole cost of the improvement, therefore, the town having adopted

the assessing ordinance it is thereafter too late to withhold any items which should have been included in the assessment, because the funds received from the assessment belong strictly to the bondholders. This is made abundantly clear by another section of chapter 151, S. L. 1899, namely, section 35, which is in part as follows: " * * * said bonds and warrants to be payable out of the moneys collected, on account of the assessments made for said improvements respectively; and all moneys collected from said assessments for any improvement shall be applied to the payment of all bonds and warrants issued, until payment be made of all the said bonds or warrants; * * *." This statute unequivocally gives the bondholders prior lien on any and all proceeds received from the assessments.

In conclusion, it is to be noted that this action is not for the purpose of recovering an admitted shortage in the fund, but is to recover the full amount of the matured and unpaid bonds in the hands of plaintiff for which the town became liable through the failure of its treasurer, as trustee, to meet the requirements of the statute in such cases made and provided, for the payment of the bonds in question.

Contrary to the contention made by defendant in error that plaintiff in error stands to gain in the amount of interest to be received by having a judgment for the amount of the principal involved, together with the legal rate of interest thereon, it is to be noted that the bonds provide for six per cent interest, which is the percentage fixed by Colorado statutes on such matters. The interest involved in this case should be computed at the rate of six per cent per annum on the principal involved from October 1, 1943, which, together with the amount of principal, constitutes the base of the judgment to be entered on which the same legal rate of interest attaches.

The judgment is affirmed in part and reversed in part and the cause remanded with directions to the trial court to enter judgment as of October 1, 1953 for plaintiff as

above outlined, which is in accord with the prayer of the complaint, and such judgment is not to be prorated with the Firemen's Pension Fund.