No. 19,609.

WILLIAM J. WHATLEY *v.*
DOROTHY STEVENS WOOD, ET AL.
(366 P. [2d] 570)

Decided November 13, 1961. Rehearing denied December 18, 1961.

Mr. CLIFFORD W. MILLS, Mr. EUGENE H. TEPLEY, for plaintiff in error.

Messrs. LEWIS, GRANT & DAVIS, Messrs. ZARLENGO, ZARLENGO & SEAVY, Mr. TELLER AMMONS, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as plaintiff and to defendants in error as defendants or by name where less than all of them are identified.

The action was brought by plaintiff to remove a cloud on the title to numerous patented mining properties lo-

cated in Garfield county amounting in the aggregate to 1899.60 acres of land. It is alleged in the complaint that plaintiff is the owner of the property; that defendants assert some interest therein adverse to plaintiff; that defendant John V. Cuddy (who prosecuted a separate writ of error in case No. 19,551 decided as of even date herewith) claims a leasehold interest in said property, and that said claimed leasehold is void. The prayer of the complaint is that the court adjudicate the rights of all the parties with respect to said property; that defendants be required to set forth the nature of their claims; and for a decree that defendants have no interest in the real estate, adjudging that plaintiff is the owner in fee simple and entitled to possession of the property. In response to a motion of defendants, plaintiff filed a "More Definite Statement" which incorporated certain recorded deeds and other documents of record to which we will refer as required.

Defendants by answer denied that plaintiff owned the property; admitted that they claim an interest therein; admitted the leasehold interest asserted by Cuddy and alleged that it was valid; admitted the existence of the documents appearing of record in the Recorder's office and alleged that said recorded instruments established that, " * * * title to said property has been vested in the defendants for twenty years or more"; and denied the validity of any and all documents under which the plaintiff claims. In all, sixteen separate defenses are set forth in the answer of defendants. Our determination of the controlling issue renders it unnecessary to make a detailed analysis of all of these allegations. Generally, defendants rely on several statutes of limitation and allege that there was a gross inadequacy of consideration for the deed upon which plaintiff relies, received from one Leach, with whom it is alleged he conspired to defraud the defendants and enrich himself. It is further alleged that plaintiff is not entitled to bring the action for the reason that he is not a stockholder or creditor

of the defunct corporation which formerly owned the real estate. Defendants sought a decree that they were the owners of the property.

Trial was to the court and judgment entered as prayed for by defendants. Plaintiff seeks review of the judgment by writ of error.

The facts giving rise to this controversy are involved, and we outline only those considered pertinent to the issues to be determined as follows:

The Colorado Carbon Company was organized as a Colorado corporation November 16, 1915, for a period of twenty years, for the purpose of acquiring title to oil shale lands in Colorado and for the operation thereof. By patent issued in 1923 the corporation became the owner of all the land in dispute. Prior to 1928, Richard E. Leach, T. E. Stevens and Charles P. Murphy were the directors and officers of said company. At a meeting of stockholders held April 12, 1928, these directors were again elected to the posts they had theretofore held. No subsequent election was ever had and the three named persons constituted the "board of directors acting last before the time of its [the corporation] dissolution," under the provisions of 1935 C.S.A., chapter 41, section 62 (C.R.S. 1953, 31-6-1, et seq., repealed by corporate code adopted by the Session Laws of 1958, page 203, et seq., section 148). The corporation was dissolved November 16, 1935, at which time its corporate life expired under its original charter.

Annual reports filed with the Secretary of State for the years 1928 through and including the last report filed March 15, 1935, listed the above-named Stevens, Leach and Murphy as directors of the corporation. The said last report was signed by Stevens as president and one Gobble as acting secretary, and contained a statement that Leach was also secretary and treasurer of the corporation.

Ad valorem taxes levied against the lands of the defunct corporation were unpaid and tax certificates is-

sued. January 2, 1938, an application was made to the treasurer by J. C. Rigney for the issuance of a treasurer's deed to the property. April 6, 1938, an action was commenced in the district court of Garfield county by the said Stevens, Murphy, and Leach as "trustees of the creditors and stockholders of the Colorado Carbon Company," in which action the said Rigney, the county treasurer, and others, were named defendants. The prayer of the complaint sought an injunction against the issuance of the treasurer's deed and a notice of lis pendens was filed with the county clerk and recorder. The complaint was verified by an attorney (who will hereinafter be referred to as "the lawyer") appearing as one of counsel for the said surviving trustees. No appearance on behalf of defendants named in said action ever was made.

On May 5, 1938, a praecipe to dismiss the above-mentioned action with prejudice, signed by attorneys for plaintiffs, was filed. On the same day a treasurer's deed to the lands in dispute was issued to Rigney, the applicant therefor, although no judgment of dismissal of the action ever was entered. Rigney thereupon immediately (May 5, 1938) executed a quitclaim deed to the land involved, to the lawyer. The grantee of this deed had theretofore been employed by the trustees to protect the assets of the trust and, as will hereafter be seen, the law will not permit him to become the purchaser and owner, in his own right, of property he was employed to protect.

Between May 5 and June 20, 1938, the lawyer executed a fifty-year grazing lease in favor of one Mahaffey upon all of the real estate in dispute. This lease contained the following:

"The said lessor [the lawyer] does not warrant or guarantee title in himself to the said premises, but merely agrees to lease to Mahaffey the said premises under such title as he has acquired."

The only consideration recited in the lease was the

undertaking by Mahaffey to pay all taxes that might accrue against the property during the term of the lease. The validity of this instrument is the subject matter involved in cause No. 19,551 before this court and determined by opinion announced this date.

On the 20th day of June 1938, four additional pertinent events took place: (1) The lawyer quitclaimed the property in dispute to T. E. Stevens and Charles P. Murphy, two of the surviving directors; (2) on the same day Stevens and Murphy, as trustees of the defunct corporation, wrote an offer to themselves, as creditors of the corporation, to deed the property from themselves as surviving trustees to themselves individually in satisfaction of whatever debt was owed to them by the defunct corporation; (3) on the same day, and before the same notary public employed by the lawyer for the acknowledgment of his deed to Murphy and Stevens, the said Charles P. Murphy and T. E. Stevens, describing themselves in both the body of the deed and over their signatures as "the sole surviving directors and as such, trustees of creditors and stockholders of the Colorado Carbon Company, a defunct Colorado corporation," executed to themselves individually a deed to the disputed land; and (4) on the same date the lawyer assigned the undated Mahaffey grazing lease to Stevens and Murphy.

Charles P. Murphy died December 24, 1953, and the defendants Marie G. Murphy and Wallace E. McGowan, as executor of the estate of Irene McGowan, deceased, claimed an interest in the property under the last will and testament of Charles P. Murphy. T. E. Stevens died April 12, 1957, and the defendants Dorothy Stevens Wood, Truman Stevens Wood, and Ben Brown Wood claimed an interest in the property as grantees without consideration under a gift quitclaim deed from T. E. Stevens. Following the death of Stevens and Murphy the sole surviving director of the defunct corporation was Richard E. Leach.

On March 7, 1958, plaintiff, having shortly theretofore learned of the foregoing chain of events, secured a quitclaim deed executed by Richard E. Leach as the sole surviving director, and, as such, trustee of the creditors and stockholders of the Colorado Carbon Company, a defunct Colorado corporation. The consideration paid for this deed was $150.00 and the deed was promptly placed of record in the office of the Clerk and Recorder of Garfield county. Institution of this suit followed.

The pertinent portion of the judgment and decree of the trial court is as follows:

"1. That the defendants Dorothy Stevens Wood, Truman Stevens Wood, and Ben Brown Wood are the owners in fee simple of an undivided one-half interest in and to the following described real estate situate in the County of Garfield and State of Colorado, and that the defendant Marie G. Murphy and the successors to the interest of Irene McGowan, deceased, are the owners in fee simple of an undivided one-half interest in and to the following described real estate situate in the County of Garfield and State of Colorado, all subject to the leasehold estate of the defendant, John V. Cuddy, as set forth in the lease recorded in Book 189 at Page 577 Garfield County Real Estate Records: (Here follows a description of the property) and that complete fee simple title in and to said real property, be and hereby is quieted in and to the above named persons according to their respective interests as hereinabove set forth.

"2. That the plaintiff has no right, title or interest in or to the said real property hereinabove described, or any part thereof, and that he, and all those claiming by, through, or under him, are forever enjoined from asserting any claim, right, title, or interest in or to the said real property or any part thereof.

"3. That plaintiff take nothing by his Complaint and that the same be, and hereby is dismissed, with prejudice. * * * "

356

## Questions to be Determined.

First. *Under the facts recited above, did the title acquired by the lawyer from J. C. Rigney divest the title of the three surviving directors of the defunct corporation, for whom he appeared as attorney in the action to enjoin the issuance of the treasurer's deed to Rigney?*

This question is answered in the negative and the trial court erred in decreeing otherwise. At all times material to the issues in this case, C.R.S. '53, 31-6-1, was in effect. In pertinent part this statute reads:

"Upon dissolution by expiration of its charter, or otherwise, of any corporation * * * the board of directors or trustees of such corporation * * * acting last before the time of its dissolution, and the survivors of them, shall be the trustees of the creditors and stockholders of the corporation dissolved. The said trustees shall have full power to settle the affairs of the same; * * * "

 The surviving trustees of the creditors and stockholders could not acquire title in the lands owned by the corporation by permitting such lands to be sold for taxes and thereafter becoming the purchaser thereof from the grantee named in the treasurer's deed. The fiduciary relationship which existed between the surviving directors and the creditors and stockholders of the defunct corporation precluded the acquiring of any interest other than as trustees for the use and benefit of all the said creditors and stockholders. Under the circumstances shown, the acts and manipulations of the "lawyer," and the two directors with whom he dealt, were in effect and amounted to nothing more than a redemption from the tax sales, leaving the title to the lands involved in the three surviving directors as on the day the corporation became defunct.

 In support of this salutary and well established principle we think it sufficient to direct attention to Vol. 3, Pomeroy's Equity Jurisprudence, sec. 598, p. 805, from which we quote:

" \* \* \* The rule is inflexibly established that where, in the management and performance of the trust, trust property of any description, real or personal property, or mercantile assets is sold, the trustee cannot, without the knowledge and consent of the cestui que trust, directly or indirectly become the purchaser. Such a purchase is always voidable, and will be set aside on behalf of the beneficiary, unless he has affirmed it, being sui juris, after obtaining full knowledge of all the facts. It is entirely immaterial to the existence and operation of this rule that the sale is intrinsically a fair one, that no undue advantage is obtained, or that a full consideration is paid, or even that the price is the highest which could be obtained. The policy of equity is to remove every possible temptation from the trustee. The rule also applies alike where the sale is private, or at auction, where the purchase is made directly by the trustee himself, or indirectly through an agent, where the trustee acts simply as agent for another person, and where the purchase is made from a cotrustee. *Finally, the rule extends with equal force to a purchase made under like circumstances by a trustee from himself.* A trustee acting in his fiduciary character, and without the intervention of the beneficiary, cannot sell the trust property to himself, nor buy his own property from himself for the purposes of the trust." (Emphasis supplied.)

In the instant case it was the obvious duty of the lawyer who brought the action as attorney for *three* "surviving trustees" to accomplish the purposes for which the action was brought; namely, to protect the land against loss to the end that the assets might be available for the creditors and stockholders of the defunct corporation. In the process of discharging the employment entered upon as counsel for all the trustees, the lawyer could not acquire the property in his own right, any more than any of his clients could accomplish such a result. *Hurt, et al. v. Schneider, et al.,* 61 Colo. 104, 156 Pac. 600. Any title acquired by him was held in

trust for his clients. In bringing about this result by taking the quitclaim deed from Rigney, the lawyer accomplished all that could have resulted by successful prosecution of the litigation or by redemption from the tax sales. The title of the lawyer by operation of law became the title of all three surviving directors. *Stansell v. American Radiator Co.*, 163 Mich. 528, 128 N.W. 789. These parties held it in trust for the creditors and stockholders of the corporation, and when Stevens and Murphy took a quitclaim deed from the lawyer they acquired nothing whatever that they did not have prior to the commencement of the action to enjoin the issuance of the treasurer's deed, except that said property was then freed from the tax lien. They gained nothing other than what they would have gained had the issuance of the tax deed been enjoined. *Gibson Co. v. Elze,* 88 Colo. 181, 293 Pac. 958; *Barlow v. Hitzler,* 40 Colo. 109, 90 Pac. 90.

Stevens and Murphy recognized the application of the foregoing principle to their situation when they attempted to convey the real estate "as the sole surviving directors and as such trustees of the creditors and stockholders of the Colorado Carbon Company, a defunct corporation," to themselves in their individual capacity. The description of themselves as *sole* surviving directors was palpably false. Leach was a surviving director and his participation and consent to any disposition of the property was essential to the validity of any transaction designed to accomplish that result.

Second. *Was the deed executed June 20, 1938, from Stevens and Murphy as trustees to Stevens and Murphy individually, void, or was it merely voidable at the behest of a creditor or stockholder of the corporation?*

The answer is that the deed was void. There is an abundance of authority that where two or more persons hold title to property as trustees, any instrument purporting to convey that property must be executed by all of the trustees before a valid transfer of title will be

accomplished. *Smith v. Steele Motor Co.,* 53 Ida. 238, 22 P. (2d) 1070; *Newhall v. Western Zinc Mining Co.,* 164 Cal. 380, 128 Pac. 1040; *Black, Sivalls, etc. v. Connell,* 149 Kan. 118, 86 P. (2d) 545; see also 19 C.J.S., p. 1511; 54 Am. Jur. 213, 235; *Thompson, Real Property,* Vol. 5, sec. 2336, p. 46. The objection that plaintiff, an outsider, is making a collateral attack upon the validity of deed which is voidable only upon suit by a creditor or stockholder, is without merit.

Third. *Is the action brought by plaintiff barred by any statute of limitations?*

█ This question is answered in the negative. Stevens and Murphy expressly recognized that they were trustees on June 20, 1938, and that any interest in the land in dispute standing in their names was held by them in trust. At no time did either of them give notice to anyone that the trust was repudiated. As late as March 3, 1954, Stevens signed and acknowledged the gift deed in which he described himself as a trustee.

This jurisdiction has long since adopted the rule that statutes of limitation cannot run in favor of a trustee unless he has repudiated the trust and given notice thereof to the beneficiaries. In the early case of *Warren v. Adams,* 19 Colo. 515, 36 Pac. 604, the following quotation (from another appellate court) was given approval:

" ' * * * As long as there is a continuing and subsisting trust, acknowledged or acted on by the parties, the statute does not apply; but if the trustee denies the right of his *cestui que trust,* and the possession of the property becomes *adverse,* lapse of time, *from that period,* may constitute a bar in equity.'

\* \* \*

"The payment of taxes and the redemption of the land from the tax sales by Iliff, *being consistent with his duty as trustee,* did not constitute such a hostile holding or claim on his part as would evidence a repudiation of his trust.

" 'The disloyal acts * * * must be open, continued and

notorious, so as to preclude all doubt as to the character of the holding, or the want of knowledge on the part of the owner. * * * ' " (Emphasis supplied.)

Numerous cases thereafter have adhered to the rule. *French v. Woodruff,* 25 Colo. 339, 54 Pac. 1015; *Ballard v. Golob,* 34 Colo. 417, 83 Pac. 376; *Vandewiele v. Vandewiele,* 110 Colo. 556, 136 P. (2d) 523; *J. K. Mullen Investment Co. v. Town of Arvada,* 128 Colo. 227, 261 P. (2d) 714.

█ Under the authorities above cited, payment of taxes by or through a trustee, or taking title in the name of a trustee, does not meet the requirement that a holding must be open, hostile, and adverse to the right of the beneficiaries of the trust in order to start the running of a statute of limitation. In the instant case there was no repudiation of the trust by Murphy and Stevens during their lifetime, and even had there been one no notice thereof was ever given to the beneficiaries of the trust, namely, the creditors and stockholders of the defunct corporation. Under these circumstances the statutes of limitation relied upon are inapplicable. In holding to the contrary the trial court was in error.

Fourth. *Under the issues framed by the pleadings concerning the adequacy of the consideration paid by plaintiff for the property which he knew was held in trust by his grantor, and under the record as made before the trial court, are we justified in adjudging plaintiff to be the owner of the disputed land thereby freeing the same from all claims of creditors and stockholders of the defunct corporation?*

█ This question is answered in the negative. Plaintiff paid less than eight cents per acre for the land. It was assessed for tax purposes at $3.00 per acre. At the time Leach, the last surviving trustee, executed a quitclaim deed to plaintiff, he, Leach, was an old man who at best was approaching senility. Within a few months after the deed was signed he was adjudged a mental incompetent and has since died.

The trial court made no findings with reference to the questions raised concerning the adequacy of the consideration or the good faith of the transaction. In view of its findings that defendants were entitled to prevail upon the deeds under which they claimed, there was no reason for findings upon the other issues raised. There was very little evidence pertinent to these undetermined issues.

Plaintiff had full knowledge of the fact that Leach could only act as trustee for the stockholders and creditors of the corporation, and equity and justice demand that the adequacy of the consideration and the fairness of the transaction between the aged Leach and the plaintiff be inquired into and determined on such evidence as may be presented upon that issue. We are not unmindful of the fact that plaintiff has been required to litigate the issues involved in the asserted claim of defendants; that the stockholders and creditors of the defunct corporation could conceivably be materially benefited by the fact that the clouds upon the title to the real estate have been removed.

Justice requires that in the event plaintiff's deed cannot be sustained on further hearing in this cause, the trial court shall appoint a receiver and proceed to a sale of the property. From the proceeds derived from such sale, as a first charge against the proceeds after expenses of the receiver, plaintiff shall be reimbursed for his expenditures and the reasonable value of the services rendered by his counsel in presenting the litigation, and for his costs expended in that behalf. We do not by this statement indicate that the trial court should invalidate plaintiff's deed. It may be that when all the pertinent facts are before the court the deed upon which plaintiff relies will stand.

The judgment is reversed and the cause remanded with directions to enter a decree holding the conveyances and transactions between the lawyer and Stevens and Murphy and from Stevens and Murphy to them-

selves, void and of no effect; as to the conveyance from Leach as sole surviving trustee to plaintiff Whatley, the cause is remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE MCWILLIAMS not participating.