No. 22191.

Harold J. Miller *v*. The First National Bank of
Englewood and Floyd Winslow and Edna Winslow.
(435 P.2d 899)

Decided January 8, 1968.

450

H. D. Reed, for plaintiff in error.

Richard H. Simon, for defendant in error The First National Bank of Englewood.

*In Department.*

Opinion by Mr. Justice Hodges.

The issue on this writ of error involves the propriety of one lien holder acquiring title to real property through a treasurer's deed, thereby extinguishing the interests of another lien holder.

This issue became definitive in an action to quiet title to certain real property in Jefferson County, Colorado. The action was brought by the defendant in error,

the First National Bank of Englewood, under R.C.P.
Colo. 105. The plaintiff in error, Harold J. Miller, one
of the named defendants in the trial court, had a valid
judgment lien for $25,106 on the subject property.
Miller, in his answer and amendment to his answer, in
substance alleged that the Bank acquired its purported
fee simple title through a treasurer's deed; that it ac-
quired such title as a nominee of Floyd and Edna
Winslow, holders of the first deed of trust on the sub-
ject property; and that, therefore, the Bank was im-
properly attempting to establish virgin title by and
through the treasurer's deed which would extinguish
his judgment lien. Miller prayed for dismissal of the
Bank's complaint and requested an order holding that
the Bank held title as trustee for the Winslows; that the
property be ordered sold under the supervision of the
court; and that from the proceeds of the sale appropriate
distribution be ordered.

The trial court ruled against the contentions of Miller
and decreed in favor of the Bank based upon its findings
which, in pertinent substance, are as follows:

1. That Miller had knowledge of the last date upon
which a judgment lien owner could redeem the subject
property from the tax sale but that he failed to exercise
his right of redemption.

2. That the Winslows had no duty to redeem the
property from the tax sale in order to preserve their
lien right or the lien right of Miller.

3. That the expiration of the time to redeem from
the tax sale and the execution and recording of a valid
treasurer's deed effectively created a new title, free
and clear of all liens and encumbrances of record prior
to the issuance of the treasurer's deed.

4. That the Bank at the time of the commencement
of this action was, and it now is, the owner in fee simple
with right to possession of the real property and that
the defendants (of the named defendants only Miller
substantially defended, most of the others defaulted)

have no right, title, claim or interest in or to the subject property.

Maintaining that the court erred in its findings and judgment, Miller brings this writ of error seeking reversal. It should be noted this is the second writ of error involving this litigation. In *Miller v. First National Bank of Englewood,* 156 Colo. 358, 399 P.2d 99, a quiet title decree in favor of the Bank on a motion for summary judgment was reversed and the cause was remanded for the reason that the trial court abused its discretion in not allowing Miller a continuance of the hearing on the summary judgment motion to permit him to take certain depositions and to utilize other discovery procedures in order to resist the motion and amend his answer.

In order to understand fully the manner in which the issue here materialized, it is necessary to relate the fact situation antecedent to the filing of the quiet title action by the Bank.

On August 15, 1957, the owners of the subject property, Evergreen Club Montagnard, executed and delivered to a Mr. Jackson and Mr. Coke two promissory notes totaling $77,500 together with a first deed of trust on the realty here involved. On November 10, 1959, these notes and the deed of trust were purchased by the Winslows. Simultaneously therewith, and in order to consummate this purchase, the Winslows borrowed $69,000 from the Bank. They executed their promissory note for this sum and assigned to the Bank as security for the payment of their note the two promissory notes and the deed of trust. All of the notes remained unpaid.

Not only did the land owner, Evergreen Club Montagnard, fail to make payments on the two notes but it also failed to pay the real property taxes assessed against the subject property. One Carl R. Smith purchased the tax certificate thereon on December 4, 1958 and paid subsequent taxes to a total of $10,953. Smith

therefore was entitled to a treasurer's deed on the property in March 1962 unless there was a prior redemption.

Also, during this period of time, Miller had obtained a judgment against Evergreen Club Montagnard for $25,106. This judgment was recorded in the records of Jefferson County on February 23, 1960 and like all the notes involved, remained unpaid.

It was at this point in time that the Bank began "putting pressure" on the Winslows because their note for $69,000 was not being paid and the Bank was fearful that if a treasurer's deed issued to Carl R. Smith, the first deed of trust which it held as collateral security would become valueless. After being advised by his attorney and a representative of the Bank, Mr. Winslow contacted Carl R. Smith, the tax buyer, and a written agreement was entered into between them dated January 11, 1962. This agreement recites that Smith, as the holder of the tax certificate, would be entitled to a treasurer's deed on the subject property on March 3, 1962, if not sooner redeemed; that the Winslows desired to purchase Smith's interest therein and accordingly, the parties agreed that Smith would not sell or dispose of the tax certificate and that if a treasurer's deed was issued to Smith, he would convey the property to the Winslows, or their nominee, upon payment to Smith of the amount of the unredeemed taxes and interest plus $1,500; and that in the event of redemption, the agreement would be void. Thereafter, on March 5, 1962 Smith was issued a treasurer's deed.

The Winslows then entered into a written agreement with the Bank dated March 19, 1962 which recites the issuance of the treasurer's deed to Smith and the agreement by which Smith agreed to convey the subject property to the Winslows or their nominee. This agreement also provided that the Bank agrees to be designated as the nominee and further agrees, at the expense of the Winslows, to commence a quiet title action on the real property involved, and upon the successful com-

pletion of this litigation, the Bank agrees to convey the property to the Winslows upon their execution of a new promissory note and first deed of trust on the property to secure the payment of Winslows' $69,000 debt to the Bank.

Pursuant to their agreements with Smith and with the Bank, the Winslows then paid Smith $14,192 and Smith, at the direction of the Winslows' attorney, executed and delivered to the Bank a quit claim deed upon which the Bank bases its claim of title.

In his testimony, Mr. Winslow stated that he became aware in 1959 or 1960 of Miller's judgment against Evergreen Club Montagnard.

The Bank in its complaint named the Winslows as defendants along with Miller and other defendants, including Evergreen Club Montagnard, which defaulted. Of particular interest and significance to the issue involved is the answer filed on behalf of the Winslows. With forthright clarity their answer alleges:

"3. They admit the allegations contained in paragraph 3 of the Complaint, insofar as these allegations pertain to all other defendants, except these defendants, Floyd Winslow and Edna Winslow. In further answer to the allegations contained in paragraph 3 of the Complaint, these defendants state that they have a valid claim against and rights, title, equities and interests in and to the real property described in the Complaint. This claim, and these rights, title and equities constitute contractual rights to have the property, which is the subject matter of this action, conveyed to these defendants, upon payment by these defendants of an indebtedness owed by them to the plaintiff."

\*　\*　\*　\*　\*　\*

"WHEREFORE, these defendants pray as follows:

A. That the title to the property which is the subject matter of this action be quieted in the plaintiff, and that the plaintiff be adjudged and decreed to be the owner thereof, in fee simple, subject, however, to the

rights and claims of these defendants requiring the plaintiff to convey said real property to them upon payment by them of the indebtedness owed to the plaintiff." ·

\* \* \* \* \* \*

From the foregoing undisputed facts and pleadings, it is clearly demonstrated that the Winslows as holders of the first deed of trust were in fact the real plaintiff parties in interest, since the quiet title action, if successful, would result in their receiving title free and clear of Evergreen Club Montagnard's ownership interest and all prior lien interests including Miller's judgment lien. We believe it is also obvious that the Winslows, as a result of their agreement with Smith, the tax buyer, made him the actor on their behalf in applying for and receiving the treasurer's deed. The Winslows could have redeemed before the issuance of the treasurer's deed, but, they saw fit rather to have the treasurer's deed issued, thus establishing a new title through which they would benefit in accordance with their agreements with Smith and the Bank. The resultant effect therefore would be the same if the Winslows had, in fact, purchased the tax certificate, paid the subsequent taxes, and had been issued a treasurer's deed. It is in this posture that we now consider the issue presented by this writ of error. In equity the indirection by which the Winslows would have received the new and virgin title is cast aside in order to get at the reality of the matter.

Any person legally qualified to contract may become the purchaser of a tax certificate and have a treasurer's deed issued to him when there is no redemption. There are exceptions to this, however, which have evolved from case law and the application of equitable principles. Several classifications of persons, because of their relationship with or interest in the real property involved, are not permitted to buy the property at a tax sale or be issued a treasurer's deed.

██ . One such classification applies to situations involving the fiduciary relationship. It is universally held that a person who holds a position of trust and confidence with respect to another cannot acquire a treasurer's deed on the property of the other where such property is the subject of the relationship. Stated another way, a person having a fiduciary relationship position, such as agent, attorney, guardian, representative or trustee, may not become the purchaser at a tax sale of the property of his principal for the purpose of eventually securing a treasurer's deed for his own purposes. A title acquired by such a person is generally held to have been acquired in trust for the benefit of his principal, or that the acquisition of the treasurer's deed is to be treated merely as a redemption. See 85 C.J.S. *Taxation* § 809C and 51 Am. Jur. *Taxation* § 1053 and § 1057. This general rule has been recognized by this court in *Whatley v. Wood,* 148 Colo. 349, 366 P.2d 570; *Gibson Co. v. Elze,* 88 Colo. 181, 293 P. 958; *Hurt v. Schneider,* 61 Colo. 104, 156 P. 600; and *Barlow v. Hitzler,* 40 Colo. 109, 90 P. 90.

 The foregoing fiduciary relationship rule and the Colorado cases cited are mentioned not because of their applicability to the instant case but to illustrate that the key to this rule is the relationship between the tax buyer and the person whose interest in the property would be extinguished. Where this relationship exists, it is held as an equitable principle that the fiduciary has an obligation and duty to pay the taxes for his principal, thereby protecting the interest of his principal in the property. On this premise then, the acquisition of the treasurer's deed is deemed to be merely a redemption, or in other words, the payment of the deliquent taxes.

██ It is necessary to point out also that the fiduciary relationship rule is an equitable concept which premises its validity upon a right to pay taxes co-related with an accompanying duty to pay taxes; and that this duty

is breached when the fiduciary does not pay the taxes or does not redeem but instead buys a tax certificate and is issued a treasurer's deed.

We now proceed one step further to consider what relationship, if any, and what duties, if any, may exist between lienors on the same property, where one of the lienors acquires a treasurer's deed thereby extinguishing the other lien. It is within this category that the facts of the instant case fall.

 The right of redemption from a tax sale is afforded to ". . . any person having a legal or equitable claim . . ." in the subject premises, as stated in 1965 Perm. Supp., C.R.S. 1963, 137-12-3(1). As a corollary, it can also be stated that any one having a legal or equitable claim may pay and has a right to pay the taxes on the subject property for the protection of his claim.

We therefore commence our consideration of the issue on the premise that statutorily, in Colorado, the Winslows had a right to redeem; and furthermore, that the deed of trust they held gave them also this right to pay the taxes for the purpose of protecting their lien rights against tax sales and the consequences of a treasurer's deed. In equity therefore will a duty be imposed on the Winslows to pay these taxes? If it is deemed right, just and in the public interest to say that the Winslows had this duty, then it follows that they breached this duty when they arranged through the agreements with the tax buyer and the Bank to become the owners through the treasurer's deed.

The rights and duties of lienors with respect to the payment of taxes and redemption with relation to their individual action in acquiring a treasurer's deed is the subject of a comprehensive annotation at 140 A.L.R. 294. In prologue to a detailed account of the many cases considering this subject, the text writer mentions some conflict of authority as to whether one lienor has the right to acquire and hold a tax title as against persons who either own other interests in the

property or have liens thereon. It is neverless concluded that the majority of the cases which have considered the question have denied the right, though not always for the same reasons or under the same circumstances.

 We could not discover any Colorado cases involving the precise issue involved here; however, we have examined numerous other cases from other jurisdictions. In our view, the generally accepted doctrine is that a person having a lien interest in land which would entitle him to redeem from a tax sale cannot by taking a treasurer's deed eliminate the rights of others similarly interested with him in such property. The equitable principle involved is based upon the mutual rights of lien holders to pay the taxes to protect their lien interests, and the mutual duties of lien holders not to acquire a treasurer's deed to the disadvantage of the other lien holders. Many cases, in applying this principle, refer to the land as a common fund or security for the payment of liens, and, therefore, hold that it wou'd be unjust and inequitable to permit one lien holder to consume the entire common fund or security by taking title either directly or indirectly through a treasurer's deed

Typical of the cases in many jurisdictions which have recognized and followed this equitable concept is *Lane v. Wright*, 121 Iowa 376, 96 N.W. 902, 100 Am. St. Rep. 362, involving judgment lienors. It was therein held that equity would not permit one lienor to acquire a tax title thus cutting off the other lienor, but would treat his purchase of the tax title as a payment of the taxes by a redemption thereby giving him a preferred lien to the extent paid out to redeem.

The reasoning and philosophy which is the foundation of this generally accepted rule is well expressed in *Lane* as follows:

"The principle which involves the rule denying the right of one lien holder to obtain a tax title to the disadvantage of others in similar relation to the common

security seems to be that as the law gives each of them the right to protect the security by making a redemption and gives the redemptioner a preferred lien to the extent of his disbursement for that purpose, it would be inequitable to permit him to waive such right and become a purchaser at the sale, and thus, by an expenditure not greater than would have been required to pay the tax, exclude his fellow lien holders from all participation in the common fund. The proposition seems to be entirely just, while the opposite rule would often bring about manifestly inequitable results."

*Koch v. Kiron State Bank,* 230 Iowa 206, 297 N.W. 450, 140 A.L.R. 273 involved a holder of a junior mortgage acquiring a tax title. *Lane,* and numerous other authorities were cited as precedent for the court's holding that the junior mortgagee is not permitted to acquire a tax title as against another lienor.

We agree with and adopt the general rule that one lienor may not acquire a tax title as against other lienors. It is just, equitable and in the public interest to do so. To hold otherwise on the facts of the instant case, would have no other effect than to generate collusive agreements and practices harmful to many who look to real property for the payment of their judgments, their promissory notes, or their other just accounts.

Applying the principle herein enunciated, we hold that the Bank's acquisition of title through the treasurer's tax deed, as the nominee of the Winslows, shall be treated as a redemption and that as such, the title is subject to valid and enforceable existing liens.

Accordingly, we therefore hold that the trial court erred in its judgment quieting title to the subject real property in the Bank, and the judgment is therefore reversed.

This case is remanded to the trial court with directions to conduct any further hearings and proceedings as may be deemed necessary by the trial court in order to

make such findings as may be required as a foundation for a decree which will grant full and adequate relief, completely determine the controversy, and enforce the rights of the parties in accordance with R.C.P. Colo. 105(a).

The judgment is reversed and the cause is remanded with directions.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE KELLEY concur.