JAMES STINSON

v.

THE CONNECTICUT MUTUAL LIFE INSURANCE CO. *et al.*

*Opinion filed June 18, 1898.*

1. MORTGAGES—*mortgagee cannot acquire tax title against mortgagor.* A mortgagee, whether in or out of possession, cannot acquire and set up a tax title against the mortgagor, and when, instead of paying the mortgagor's delinquent taxes, he purchases the property at the sale, either in his own name or through third parties, the mortgagor may treat such purchase as a payment, and have the certificate canceled on refunding the amount paid, with interest.

2. SAME—*effect of mortgagor's deposit of redemption money after notice of mortgagee's purchase.* A mortgagor who has allowed the property to be sold for taxes cannot, after notice that the mortgagee has purchased the certificate of sale, avail of the provisions of section 211 of the Revenue act (Rev. Stat. 1874, p. 893,) and cut off the mortgagee's right to the amount paid, with interest, by depositing the amount bid with the clerk, as therein provided.

3. SAME—*effect where mortgagee pays purchaser the amount required to redeem.* As between the mortgagor and mortgagee, the fact that the mortgagee procures a third party to purchase the property at a tax sale and afterwards purchases the certificate of purchase from him, paying him the amount necessary, under the statute, to redeem, instead of paying it to the county clerk, is unimportant.

4. SAME—*mortgagee may redeem from sale of fractional part of property.* Under the terms of a mortgage requiring the mortgagor to pay all taxes, assessments, rates and other charges on the property, and remove all adverse claims, clouds and encumbrances, the sale of a vigintillionth part of the property for taxes is, as between the mortgagor and mortgagee, such an encumbrance as the mortgagee may remove, by purchase of the certificate of sale, without the mortgagor's consent.

*Connecticut Mut. Life Ins. Co.* v. *Stinson,* 62 Ill. App. 319, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This was a bill to foreclose a mortgage, brought by the Connecticut Mutual Life Insurance Company, against

James Stinson.    The mortgage was executed March 9, 1881, to secure a loan of $15,000 which Stinson obtained from the company, payable March 9, 1884, with interest payable semi-annually, at six per cent per annum.    The mortgage was given on ten acres of land in Chicago, and the interest was paid promptly as it became due, no interest being due when the bill was filed, on December 26, 1893.    The mortgage contains a provision requiring Stinson to pay all taxes, assessments, rates and other charges upon said premises, and remove all adverse claims, clouds and encumbrances thereon; also at once to re-pay all advances (which are also to be included in the sums thereby secured) made for insurance, taxes, assessments, rates, redemptions from sales for taxes or assessments or in any otherwise to protect the security hereby given, with interest thereon until paid, at the rate of eight per centum per annum.

In 1893 the mortgagor failed to pay certain special assessments levied on the mortgaged premises, one for $572.85 and one for $686.81, and on the 4th and 14th days of November of that year the premises were sold.    At these sales the premises were bid in by one William Mills, who obtained two certificates of purchase, which, on the 9th day of December, 1893, he transferred by blank endorsement to the complainant.    The complainant notified Stinson that the premises had been sold in payment of the special assessments, and requested him to redeem.    Upon his failure to do so this bill was filed to foreclose the mortgage.    While the bill was pending the premises were again offered for sale for another special assessment, and on October 24, 1894, the east vigintillionth was sold to William Mills for $603.33, and a certificate having been issued, he transferred the same by blank endorsement to complainant.    It appears, however, that the company was notified by Stinson, before it purchased the certificate, not to buy or redeem the tax certificate, for the reason it was not a cloud on the title of the mortgaged

premises, and the mortgagor would resist any allowance under the mortgage on account of such sale. It also appears that on November 16, 1894, Stinson redeemed from the two sales of November 4 and 14, 1893, by depositing the amount bid at each sale with the county clerk, as is provided in section 211 of the Revenue act (Hurd's Stat. p. 1144,) where the purchaser of premises suffers the same to be sold a second time before the expiration of two years from the date of sale.

On the hearing in the circuit court on the pleadings and evidence, the court held that the sales of November 4 and 14 were properly redeemed from by Stinson, and complainant could recover nothing in the foreclosure proceedings on account of having purchased the certificates of purchase; that complainant was only entitled to the redemption money in the hands of the county clerk. The court also held that the sale on October 24, 1894, of the east vigintillionth was no cloud on the title of the mortgaged premises, and complainant was not entitled, in the foreclosure proceedings, to obtain a decree for the amount paid out in the purchase of the certificate of purchase on this sale. A decree of foreclosure was therefore rendered for the amount of the mortgage debt, disregarding entirely the amount claimed by the complainant on the purchase of the three certificates of purchase. To reverse this decree the complainant appealed to the Appellate Court, where the decree was reversed and the cause remanded, with directions to enter a decree including the amount of the three sales on the mortgage indebtedness. To reverse the judgment of the Appellate Court the mortgagor, Stinson, has appealed to this court.

ENOCH J. PRICE, (H. S. MECARTNEY, of counsel,) for appellant.

E. PARMALEE PRENTICE, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The first question presented for determination is whether the Appellate Court erred in holding that the complainant in the bill was entitled to a decree for the amount paid for the tax certificates issued on the tax sales of November 4 and 14, 1893, with interest thereon at the rate of eight per cent. It appears from the evidence that Mills, who purchased at the tax sales, was a clerk in the office of one Hamilton; that before the sale complainant made an arrangement with Hamilton to purchase at the tax sales all properties upon which complainant held mortgages, and, after the sale the tax certificates were to be transferred to complainant upon the payment of the amount bid and twenty-five per cent. Under this arrangement Mills made the purchases as directed by Hamilton, and after the sales were made complainant paid Hamilton the amount of the respective bids and twenty-five per cent, and received the tax certificates endorsed in blank by Mills. It is not claimed in the argument that if the insurance company, after the sale, had gone to the office of the county clerk and redeemed from the sale by the payment of the amount required by law, which would have been the same amount paid Mills, it would not be entitled to recover, under the mortgage, the amount thus paid. Nor is it denied that if complainant, after it acquired the tax certificates, had taken them to the county clerk and had them canceled it might recover the amount paid for the certificates. The cost in either case would have been the same, and the mortgagee was at liberty to pursue either course which it might think best. It could make no difference to the mortgagor what course was pursued, unless the mortgagee attempted to purchase at the tax sale and set up a title to the premises under its purchase. If, therefore, the mortgagee did not, by the purchase of the tax certificates from Mills, obtain a title which it could in the end set up against the mortgagor, but was bound to

hold the tax certificates for the benefit of the mortgagor as a redemption or a purchase, to be canceled, it would seem plain, under the provision of the mortgage requiring the mortgagor to re-pay advances for taxes, assessments, redemption from tax sales or assessments, the mortgagee was entitled to a decree for the amount advanced for the certificates of sale, and interest thereon.

We think the law is well settled that a mortgagee in possession is not entitled to obtain a tax title on the mortgaged premises and set it up to defeat the right of redemption in behalf of the mortgagor; but whether a mortgagee out of possession may lawfully acquire title through a tax sale, and thus cut off the equity of redemption of the mortgagor, is a question upon which the authorities are not harmonious.   But we think the clear weight of authority establishes the rule that a mortgagee, whether in or out of possession, cannot acquire and set up a tax title in the mortgaged premises against the mortgagor. In *Maxfield* v. *Willey*, 46 Mich. 255, it is said: "When the mortgagee, instead of making payment of the taxes, makes a purchase of the land at tax sale, either in his name or the name of another person who has his money for the purpose, we have no doubt of the right of the mortgagor to have the purchase treated as a payment, and to compel the cancelment of the certificate or deed on refunding the amount paid, with interest.  *  *  * Neither party to a mortgage can be suffered, against the will of the other, to buy at a tax sale and thereby cut off the other's interest." In *Woodbury* v. *Swan*, 59 N. H. 22, in the discussion of the question, the court said: "Mortgagor and mortgagee have a unity of legal interest in the protection of their title against a sale for non-payment of taxes, and against outstanding tax titles, and it is not equitable that either of them should act adversely to the other in the acquisition and use of such titles. Therefore, the mortgage contract comprises an implied agreement that while either party may buy a tax title

for the preservation of his right in the mortgaged property, neither of them will buy a tax title for the extinguishment of the title, in the maintenance of which they, as well as partners and tenants in common, are in law jointly concerned." See, also, the following cases, where ths same principle is substantially announced: *Martin* v. *Swofford*, 59 Miss. 328; *Fair* v. *Brown*, 40 Iowa, 210; *Bank* v. *Bacharach*, 46 Conn. 513; *Fish* v. *Brunnette*, 30 Wis. 102. In *Ragor* v. *Lomax*, 22 Ill. App. 628, the question is thoroughly discussed and the authorities cited, and the conclusion reached that a mortgagee cannot, whether in or out of possession of the mortgaged premises, acquire a tax title and set it up against the mortgagor.

It was primarily the duty of the mortgagor to pay the taxes on the mortgaged property, but when he failed to do so and the property was sold for the taxes, the duty then devolved upon the mortgagee to relieve the property from the burden, and, under the provision of the mortgage, charge the amount, with interest, to the mortgage indebtedness. This was done by the mortgagee. It had no right to buy in the land for the purpose of acquiring and holding a tax title as against the mortgagor, and it never attempted to do so, as shown by what was done after it obtained the certificates of tax sale. Indeed, when the form of the transaction is disregarded and the substance alone considered, it is manifest that the purchase of the certificates by the mortgagee amounted to a redemption, and nothing more. The amount paid only equaled the amount required to redeem, and the fact that the money was paid to Mills instead of the county clerk, when the rights of the mortgagor and mortgagee are only involved, is unimportant.

It will be observed that the sale of the mortgaged premises on October 24, 1894, was within less than a year from the date of the sales in 1893, and it is insisted that the mortgagor, under section 211 of the Revenue law, had the right to redeem from the sales of November 4 and 14,

1893, by depositing with the county clerk the amount bid at said sales, respectively, without penalties, and having done so, the court erred in including the sums paid for the certificates of sale of 1893. This redemption by the mortgagor was not made until the 26th day of November, 1894. Before this, however, on the hearing before the master in chancery, the two tax certificates were produced by the mortgagee and filed as evidence under which the mortgagee claimed to recover the amount paid out by it, and interest thereon, under the provision of the mortgage. After the mortgagor was thus notified that the mortgagee had in fact redeemed from these sales and produced the tax certificates, and filed them with the master for the purpose of recovering from the mortgagor the amounts advanced as a redemption, it was then too late for the mortgagor to avail of the right of redemption provided by the statute. Although the record in the office of the county clerk did not show a cancellation of the certificates of sale, they had, in fact, been canceled as certificates of sale, and the mortgagor knew that fact, and knowing the fact could not avail of the statute which authorizes a redemption in ordinary cases. We are therefore of the opinion that the court properly allowed and included in the decree the amount paid for the tax certificates issued on the sales of November 4 and 14, 1893, and interest thereon.

The next question presented is whether the court erred in allowing complainant the amount paid, and interest, for the tax certificate issued on the sale of October 24, 1894, for the east vigintillionth of the mortgaged premises. Mills purchased at this sale under the same arrangement that was made when he purchased at the sales of November 4 and 14, 1893, and after the sale the certificate was endorsed in blank and transferred to complainant upon the payment of the amount of the bid and twenty-five per cent. It is claimed that the sale of the east vigintillionth of the mortgaged premises did not

create such a claim, cloud or incumbrance as, under the terms of the mortgage, the mortgagee might remove without the consent of the mortgagor. As has been seen, the mortgagor covenanted to pay all taxes, assessments, rates and other charges upon the mortgaged premises, and remove all adverse claims, clouds and encumbrances. It may be true that if this tax sale had not been removed but allowed to ripen into a tax title the holder might not be able to maintain ejectment, or if judgment for possession was rendered there might be difficulty in obtaining possession under a writ, on account of the diminutive quantity of the land sold; but while that may all be true, the sale for the unpaid assessment was nevertheless an encumbrance, which the mortgagee had the right, under the terms of the mortgage, to have removed. The question here involved is not what title would be acquired by a purchase under a sale of the east vigintillionth, but, as between mortgagor and mortgagee under the covenant of the mortgage, was the sale an encumbrance which the appellee had the right to insist should be removed. In *Robey* v. *City of Chicago*, 48 Ill. 130, where a person at a tax sale purchased only the millionth part of a lot, it was held that he had an interest which he was entitled to protect, and in order to protect that interest he was entitled to have it, on his application, separately assessed. So here, although the fraction sold was a minute one, the sale relieved the mortgaged premises of the burden except as to the minute fraction sold, and the purchaser acquired an interest which the mortgagee might properly insist should be removed in order that the premises should be free from all encumbrance, as provided in the covenant in the mortgage.

If we are correct in the view thus taken it will not be necessary to consider the question of tender, raised and discussed in the argument of counsel, as there was not a sufficient amount tendered, at any stage of the proceedings, to cover the mortgage indebtedness and the several

amounts paid out, and interest, so as to relieve the mortgaged premises from the several special assessments upon which the property was sold.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*