VULCAN MATERIALS COMPANY, Plaintiff, *v.* BEE CONSTRUCTION CO., INC., *et al.*, Defendants.—CENTRAL STATES CONSTRUCTION CO., INC., Plaintiff, *v.* BEE CONSTRUCTION CO., INC., Defendant.—(WANER HEATING AND AIR CONDITIONING CORP., Defendant and Counterplaintiff-Appellant, *v.* CHICAGO TITLE INSURANCE COMPANY, Defendant and Counterdefendant-Appellee.)

First District (4th Division)    Nos. 80-1694, 80-1695 cons.

Opinion filed October 1, 1981.—Rehearing denied November 12, 1981.

JIGANTI, J., dissenting.

Alan L. Stefaniak, Eugene A. DiMonte, and Gary L. Goldblatt, all of DiMonte, Baker & Lizak, of Chicago, for appellant.

Robert S. Cushman, Minard E. Hulse, Jr., and Stuart Finkle, all of Keck, Mahin & Cate, of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Two cases brought from the circuit court of Cook County are consolidated here. Though both cases involve multiple parties, only Waner Heating and Air Conditioning Corp. has brought this appeal. In both cases, Waner sought to foreclose two mechanics' liens on property located in the Village of Niles and commonly known as the Green Lakes Shopping Center. The liens were allegedly valued at approximately $22,000 and were created as a result of materials supplied to and services performed on the property by Waner between 1974 and 1976.

In both cases, Waner's claims were dismissed pursuant to a motion filed by appellee, Chicago Title Insurance Company. Chicago Title is the holder of tax deeds issued on the property by the County Clerk pursuant to an order of court entered in November 1979 under section 266 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 747). Essentially, Waner's claims were dismissed because the trial court found that the tax deeds represented superior and merchantable title in Chicago Title and that the tax deeds, when issued, extinguished Waner's mechanics' liens. From the orders of dismissal, Waner appeals.

We reverse and remand.

*Background*

All of the significant facts in this case are undisputed for the purpose of this appeal. In 1972, the legal title holder of the property involved in this dispute was American National Bank and Trust Company. American National was simply a land trustee whose beneficiary was Morris Suson. Apparently in 1972, the construction of the shopping center began with a company allegedly owned by Suson acting as the developer and general contractor. Though it appears the shopping center was substantially completed, the center never went into successful operation. As a result, Suson failed to pay many of the subcontractors, including Waner, for their materials and services. One of the cases below was originally brought in 1973 by another subcontractor, Vulcan Materials Company, to foreclose on its mechanics' lien. Waner intervened in this action in 1976 and filed its mechanics' lien claims.

Suson also defaulted on a $7,000,000 construction loan made by Dovenmuehle, Inc. This loan was made in late 1974, and the default occurred in 1975. As security for the loan, Dovenmuehle had been granted a mortgage on the property from American National at Suson's direction. The other case below was originally brought by Dovenmuehle in 1977 to foreclose its mortgage. Waner was a named defendant in this action and filed a counterclaim seeking to foreclose its mechanics' liens. ·

Besides failing to pay Dovenmuehle and the subcontractors, Suson also failed to pay the 1975 real estate taxes on the property. As a result, in November 1976, the property was sold at a tax sale pursuant to a court order. The purchasers at this sale were Interstate Bond Company and Thornton, Ltd. The tax sale price was apparently between $100,000 and $150,000. There is no dispute in this case as to the validity of this sale.

While the above events were taking place, Chicago Title and Dovenmuehle were involved in a dispute between themselves. Chicago Title was the insurer of Dovenmuehle's mortgage interest and had insured the interest against any losses from mechanics' liens. The dispute involved the extent of Chicago Title's liability. The relationship between Chicago Title and Dovenmuehle is important to this case, as is the action Chicago Title took to protect Dovenmuehle's interest in the property. We will set out here in chronological order the events leading up to Chicago Title's acquisition of the tax deeds on the property and point out Chicago Title's and Dovenmuehle's participation in these events.

*August 1978*

Interstate Bond Company and Thornton, Ltd., assign their certificates of tax purchase acquired from the tax sale to George Mergili and Janice Wajda. (The consideration for this assignment appears to have been approximately $150,000.) Mergili and Wajda ostensibly act as

individuals when purchasing the certificates but in fact are employees of Chicago Title acting for Chicago Title.

## November 1978

Mergili and Wajda, acting ostensibly as individuals, file petitions in the tax court seeking an order for the issuance of tax deeds on the property under section 266 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 747). Under this section, a purchaser at a tax sale or his assignee may file a petition for tax deeds any time within five months prior to the expiration of the period of redemption. Any party having an interest in property sold at a tax sale has two years after the sale to redeem the property. (See Ill. Rev. Stat. 1979, ch. 120, par. 734.) The initial two-year period is supposed to expire in November 1978, when Mergili and Wajda file their petitions for tax deeds. However, Mergili and Wajda eventually agree to extend the initial two-year period to three years (see Ill. Rev. Stat. 1979, ch. 120, par. 744), and thus the period of redemption will not expire until November 1979.

Many of the mechanics' lien claimants receive notice of the petitions for tax deeds and some file appearances. Waner receives notice but fails to appear.

## February 28, 1979

Chicago Title and Dovenmuehle complete their negotiations and enter into a written agreement. Under the agreement, Chicago Title admits its liability to Dovenmuehle for all potential losses to Dovenmuehle's interest in the property from mechanics' liens. Chicago Title promises to defend Dovenmuehle's interest against mechanics' lien claims and pay for any losses from successful claims. In return, Dovenmuehle promises to absorb one-half of any losses from such claims. However, Dovenmuehle's loss is limited to $150,000.

Also on February 28, one of the mechanics' lien claimants who has appeared in the tax deed proceedings files an answer to the petitions for tax deeds. Various reasons for denying the petitions are alleged. One of those reasons is that the mechanics' lienholder, upon information and belief, asserts that Mergili and Wajda are employees of Chicago Title and Chicago Title is Dovenmuehle's insurer against mechanics' lien claims. The lienholder asserts that he believes Dovenmuehle and Chicago Title are involved in a possible scheme that will allow Dovenmuehle to acquire tax deeds to the property, and thus merchantable title to the property free and clear of all liens (see Ill. Rev. Stat. 1979, ch. 120, par. 747), for the minimal cost of outstanding taxes on the property. The lienholder asserts that Mergili and Wajda are acting secretly for Chicago Title and Dovenmuehle in an effort to destroy all outstanding mechanics' lien claims to the

property and thus they are not entitled to tax deeds. Other lienholders who have appeared in the tax deed proceedings file similar answers.

## March to July 1979

In discovery, Chicago Title admits that Mergili and Wajda are its employees and that it is the insurer of Dovenmuehle's mortgage interest. The February 28 agreement entered into between Chicago Title and Dovenmuehle is discovered; nevertheless, Chicago Title does not admit to a "possible scheme" between Dovenmuehle and it, and Mergili and Wajda file motions to strike the answers. Among the reasons asserted for striking the answers is that insufficient facts have been alleged to show that Dovenmuehle and Chicago Title are involved in a possible scheme. The answers are stricken, but the lienholders are given leave to amend their answers to more specifically set out Chicago Title's and Dovenmuehle's relationship with each other and how that relationship affects Mergili's and Wajda's petitions for tax deeds.

Amended answers are filed. In them, the lienholders again allege the relationship between Chicago Title, Dovenmuehle, and Mergili and Wajda. On information and belief, the lienholders allege that Dovenmuehle has paid Chicago Title the amount necessary to purchase the tax deeds and that Chicago Title intends to transfer the tax deeds to Dovenmuehle after they are issued. The lienholders allege that because of Chicago Title's relationship with Dovenmuehle, Chicago Title's employees, Mergili and Wajda, are prohibited from becoming tax deed holders and that the assignment of the certificates of purchase to Mergili and Wajda should be treated as a redemption and thus the petitions for tax deeds should be denied.

Thereafter, the lienholders who have appeared and filed answers fail to pursue their contentions, indicating that a settlement has been reached.

## August 15, 1979

Chicago Title and Dovenmuehle enter into an amended agreement. Under this agreement, Chicago Title promises to deliver to HoCo of Green Lake, Inc., a wholly owned subsidiary of Dovenmuehle, a quit-claim deed from the owners of the property, Suson and American National. This is to be delivered contemporaneously with the signing of the agreement and is apparently delivered in August 1979. Thus, at this time, Dovenmuehle not only holds a mortgage interest but is also the owner of the property, and thus the original owners of the property, likely parties to redeem from the tax sale, have been eliminated.

Chicago Title also assures Dovenmuehle in the agreement that Dovenmuehle will have merchantable title to the property within six months after the date of the agreement. Additionally, Chicago Title

promises to indemnify Dovenmuehle against any losses it may incur to mechanics' lienholders as a result of Dovenmuehle's failure to exercise its right of redemption from the tax sale.

In return, Dovenmuehle agrees to pay Chicago Title approximately $160,000 contemporaneously with the signing of the agreement.

This agreement is not revealed to the tax court and is not discovered by any of the lienholders until after the tax deeds are issued.

### September 7, 1979

A representative of Chase Manhattan Company, which owns Dovenmuehle, sends a letter to a New York bank. The representative explains that Dovenmuehle is presently in the process of attempting to minimize its losses from making the construction loan for the property. He describes that one method being employed is for Dovenmuehle's title insurance company to acquire tax deeds to the property and transfer them to Dovenmuehle.

This letter is not discovered by any of the lienholders until after the tax deeds are issued.

### November 1979

Since it still officially appears to the tax court that Mergili and Wajda are acting as individuals with no interest in the property, the tax court finds that all statutory requirements for the issuance of tax deeds have been complied with and orders the county clerk to issue tax deeds to Mergili and Wajda. Mergili and Wajda receive the tax deeds and transfer them to Chicago Title.

\* \* \*

After the time for appeal from the court order directing that tax deeds should be issued had expired, Chicago Title filed motions to dismiss all the mechanics' lien claims in the two cases before us (claims which appear to have totalled several hundred thousand dollars). Chicago Title alleged it had acquired tax deeds to the property which were issued pursuant to a court order under section 266 of the Revenue Act. One part of that section reads, "This Section shall be liberally construed so that tax deeds herein provided for shall convey merchantable title." (Ill. Rev. Stat. 1979, ch. 120, par. 747.) Chicago Title alleged that the tax deeds, when issued, extinguished all prior mechanics' liens and created merchantable and unchallengeable title in Chicago Title.

Waner challenged the motion by asserting that Chicago Title, when it acquired the tax deeds, was actually acting for Dovenmuehle. Waner alleged that Dovenmuehle, as a mortgagee with a pretax sale interest in the property, was prohibited by law from purchasing tax deeds to the property and asserting them to the prejudice of other lienholders. Hence, concluded Waner, since Dovenmuehle could not purchase a tax deed and

use it against Waner, Chicago Title could not do so on Dovenmuehle's behalf.

Chicago Title's reply to this was that Waner was barred from raising the issue in the mechanics' lien cases. Though three different theories of bar were argued by Chicago Title at the trial level, Chicago Title has argued only two of those theories on appeal, which two theories were as follows.

First, Chicago Title asserted that Waner was barred from raising the issue because of the following language in section 266 of the Revenue Act:

"Tax deeds issued pursuant to this Section are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 72 of the 'Civil Practice Act', [Ill. Rev. Stat. 1979, ch. 110, par. 72] * * * in the same manner, upon the same grounds and to the same extent as may be had under that Section with respect to final orders, and judgments in other proceedings." Ill. Rev. Stat. 1979, ch. 120, par. 747.

Chicago Title alleged that this language in section 266 prohibited Waner from pursuing a collateral attack on the merchantable title represented by the tax deeds in a proceeding other than the original tax deed proceedings. Chicago Title concluded that Waner's mechanics' liens claims had to be dismissed because of section 266 and Waner could not raise any issue in the mechanics' lien cases that challenged the validity of the tax deeds.

Second, Chicago Title alleged that, since Waner had notice of the tax deed proceedings, it was barred by the doctrine of res judicata from presenting any issue challenging the validity of the tax deeds, which issue it could have presented in the tax deed proceedings. Chicago Title asserted that other lienholders had raised the issue of Chicago Title's and Dovenmuehle's relationship and the tax court had conclusively determined Chicago Title was entitled to tax deeds despite the relationship.

The trial court granted Chicago Title's motion to dismiss, holding that the tax deeds, when issued, extinguished the mechanics' liens and Waner was barred from raising any issue concerning whether Chicago Title should have been allowed to purchase the tax deeds. This appeal followed.

OPINION

I

The alleged facts in this case, which must be taken as true for the purpose of the motion to dismiss, lead to obvious inferences. When Chicago Title and its employees took steps to acquire the tax deeds to the property, they were secretly acting for the benefit of Dovenmuehle so

that Dovenmuehle could save its mortgage interest from any losses due to mechanics' liens. Dovenmuehle had a $7,000,000 interest in the property which was threatened by at least several hundred thousand dollars in mechanics' liens claims. To abate this threat, Dovenmuehle paid Chicago Title approximately $160,000 so Chicago Title could acquire tax title to the property and transfer it to Dovenmuehle. The result is that Dovenmuehle will acquire merchantable title to the property and the mechanics' lienholders will lose any hope they have for recovering for their materials and services.

The first issue we must address is whether Dovenmuehle, as a mortgagee, could have openly become a tax purchaser, by purchasing at the tax sale or taking the certificates of assignment, and could have openly acquired tax deeds to the property and use those deeds to defeat the claims of the mechanics' lienholders. If Dovenmuehle could have legally acquired the tax deeds on its own behalf, then it is irrelevant that Dovenmuehle has attempted to acquire the tax deeds secretly through a third party. Also, if Dovenmuehle could have legally acquired the tax deeds, the issues of bar are irrelevant to this decision.

On the other hand, if Dovenmuehle was prohibited by law from openly becoming a tax purchaser or a grantee of the tax deeds, then it could not have done so secretly through a third party (see *Stinson v. Connecticut Mutual Life Insurance Co.* (1898), 174 Ill. 125, 51 N.E. 193; *McChesney v. White* (1892), 140 Ill. 330, 29 N.E. 709; *Voris v. Thomas* (1851), 12 Ill. 442), and only if Dovenmuehle was prohibited from doing so do the issues of bar become relevant to this case.

Many Illinois cases have held that certain parties, because they have an interest in the property created prior to a tax sale, are prohibited from becoming purchasers at a tax sale, assignees of the certificates of purchase, or grantees of the tax deeds, for the purpose of eliminating the interests of other parties in the property. (*E.g., Stinson v. Connecticut Mutual Life Insurance Co.* (1898), 174 Ill. 125, 51 N.E. 193 (mortgagee prohibited from purchasing at a tax sale to defeat interest of the mortgagor); *McAlpine, Polk & Co. v. Zitzer* (1887), 119 Ill. 273, 10 N.E. 901 (mortgagor through a third person could not purchase at a tax sale to defeat interest of mortgagee); *Brown v. Hogle* (1863), 30 Ill. 119 (tenant in common prohibited from purchasing at a tax sale and setting up tax deed to defeat interests of other tenants in common); *Devon Bank v. Schlinder* (1979), 72 Ill. App. 3d 147, 390 N.E.2d 447 (contract purchaser prohibited from purchasing tax deed and setting it up to defeat interest of vendor).) It has been held that if such a party in interest purchases at a tax sale, takes an assignment of the certificates of purchase, or acquires tax deeds from the county clerk, such will in the law constitute merely a payment of taxes or a redemption and not a purchase, assignment, or unlawful acquisition

of the tax deeds. See, *e.g., Stinson v. Connecticut Mutual Life Insurance Co.* (1898), 174 Ill. 125, 51 N.E. 193; *McChesney v. White* (1892), 140 Ill. 330, 29 N.E. 709; *Lomax v. Gindele* (1886), 117 Ill. 527, 7 N.E. 483.

Though Illinois courts have not specifically ruled that a mortgagee, whose interest in property arose before a tax sale, is prohibited from becoming a tax purchaser for the purpose of eliminating other liens on the property, other jurisdictions have specifically ruled that mortgagees are prohibited from doing so. (*E.g., Miller v. First National Bank* (1968), 164 Colo. 449, 435 P.2d 899; *Moore v. Crisp* (Okla. 1963), 383 P.2d 221; *Koch v. Kiron State Bank* (1941), 230 Iowa 206, 297 N.W. 450.) The reasoning underlying these decisions is, we believe, applicable here. The mortgagee has a right to redeem the property from a tax sale. In equity, the mortgagee should not be allowed to waive this right and instead become a tax purchaser, and cause injury to the other lienholders, for the minimal cost it would have taken to redeem the property from the tax sale. The property is a common fund in which all the parties have an interest. One should not be allowed to use the law of tax sales to destroy this fund to benefit oneself to the prejudice of all others. It is manifestly unfair to allow a mortgagee to use the law of tax sales for the specific purpose of working an injustice. (See *Lane v. Wright* (1903), 121 Iowa 376, 96 N.W. 902.) The law of tax sales is designed to give strangers to the property a speedy method of acquiring merchantable title to the property so the property can get back into the stream of commerce so that future taxes can be collected. (See *Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447, 143 N.E.2d 235.) It is not designed to be a method by which a party with a pretax sale interest in the property can forego the payment of the taxes, allow the property to be sold for taxes, and then acquire it for a minimal cost so that party can raise its previous interest above all other previous interests.

The facts in the present case amply demonstrate the fairness of a rule that prohibits the mortgagee from acquiring tax title to the property to raise its interest above all other prior lien interests. Out of all of the parties with an interest in the property, Dovenmuehle had to be considered the most likely party to redeem the property from the tax sale other than the owners (who had been conveniently eliminated before the period of redemption had expired). It had a $7,000,000 interest in the property. Thus, sound business sense dictates that Dovenmuehle would have been willing to spend the $100,000 to $200,000 necessary to redeem the property to save its interest.

On the other hand, parties like Waner with relatively small claims to the property would hardly have been likely to spend more than the value of their claims to effect a redemption. Their claims were doubtful to begin with, since there were so many other claims being asserted against

the property. It would have been unsound business practice to have spent, as in Waner's case, more than seven times the amount of its mechanics' lien claims to effect a redemption to save those claims. Parties in the position of Waner could have only hoped that a party such as Dovenmuehle would redeem the property. To allow Dovenmuehle to waive its right of redemption and secretly become a tax purchaser would be to allow a gross injustice.

■■ Thus, we hold that Dovenmuehle could not have become a purchaser at the tax sale, an assignee of the purchaser, or a party entitled to be issued tax deeds by the county clerk for the purpose of raising Dovenmuehle's mortgage interest above all other liens.

We note that Chicago Title, in its answering brief, does not even challenge the view that Dovenmuehle could not have become a tax purchaser openly. Instead, it apparently argues that Mergili and Wajda, when they took the assignments of the certificates of purchase and acquired the tax deeds, were merely acting for Chicago Title and not Dovenmuehle. However, the alleged facts in this case clearly show that Chicago Title intends to transfer the tax deeds to Dovenmuehle. Also, it would appear that this had to be Chicago Title's intent from the time when Mergili and Wajda purchased the certificates of tax purchase and petitioned for tax deeds. If Chicago Title did not intend from the outset to transfer the tax deeds to Dovenmuehle, then we must assume that Chicago Title originally intended to commit a fraud on its own client, Dovenmuehle, since the tax deeds would act to destroy all prior interests in the property including Dovenmuehle's. We cannot assume that Chicago Title intended to commit a fraud on its own client.

■■ Thus, we conclude that Chicago Title and its employees, since they were acting for Dovenmuehle, were prohibited from becoming assignees of the tax purchasers and were prohibited from acquiring tax deeds for the purpose of destroying all of the mechanics' liens on the property.

## II

■■ We turn now to the issues concerning bar. It is true that tax deeds, when issued, create in their holder merchantable title free and clear of all prior interests in the property if the deeds are valid. (Ill. Rev. Stat. 1979, ch. 120, par. 747; *City of Bloomington v. John Allan Co.* (1974), 18 Ill. App. 3d 569, 310 N.E.2d 437.) It also cannot be denied that Waner's mechanics' lien claims constitute a collateral attack upon the validity of the order directing that the tax deeds should be issued. In most cases, Waner could not do this because of the incontestability language in section 266 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 747). Nevertheless, it has been held that if the order directing that tax deeds should be issued is void, the tax deeds can be challenged in any

proceeding in which the issue of the validity of the deeds is raised. *Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447, 143 N.E.2d 235; *In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335; see Ill. Rev. Stat. 1979, ch. 110, par. 72(6).

■■ A void order is one where the court lacked subject matter or personal jurisdiction to enter it or one where the order is procured by fraud. (*Federal Sign & Signal Corp. v. Czubak* (1978), 57 Ill. App. 3d 176, 372 N.E.2d 965.) The kind of fraud which renders an order void is that which gives the court merely "colorable jurisdiction" to enter it. (*Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 188 N.E.2d 673.) In other words, the fraud must involve false allegations that are determinative of the court's jurisdiction. We believe the facts alleged in this case present an issue of such fraud.

■■ The concept of subject matter jurisdiction involves various elements. The fact that a court has general jurisdiction to consider the kind of case before it is not the only element of jurisdiction. Jurisdiction over any particular case depends on whether the jurisdiction of the court has been properly invoked. This latter element of jurisdiction frequently leads to controversy when the court's jurisdiction over a matter is controlled by statute. Though a court be one of general jurisdiction, when its power to act on a particular matter is controlled by statute, the court is governed by the rules of limited jurisdiction. (*Brown v. VanKeuren* (1930), 340 Ill. 118, 172 N.E. 1.) Thus, before a court can procure jurisdiction to enforce a special statutory right, it is necessary that the petition filed pursuant to that statute contain on its face all of the necessary elements required by the statute. (*Scribner v. Village of Downers Grove* (1939), 372 Ill. 614, 25 N.E.2d 54; *Brown v. VanKeuren* (1930), 340 Ill. 118, 172 N.E. 1.) If a party files a petition pursuant to a special statute and misrepresents facts required to be alleged by the statute before the court can proceed to act, then that party commits fraud in the procurement of the court's jurisdiction.

■■ Tax deed proceedings are special statutory proceedings to enforce a special statutory right. Of peculiar note is that petitions for tax deeds must be filed by the purchasers at the tax sale or the assignees of the purchasers. (Ill. Rev. Stat. 1979, ch. 120, par. 747.) When Mergili and Wajda filed petitions for tax deeds it was necessary for them to assert in the petitions that they were either purchasers at the tax sale or assignees of the purchasers. When a statute specifically identifies persons who may invoke the jurisdiction of a court in a special statutory proceeding, it is essential to the jurisdiction of the court that only the persons named institute the proceedings. See *Sims v. City of Moline* (1921), 222 Ill. App. 530; *Avery v. County Court* (1952), 126 Colo. 421, 250 P.2d 122.

■■ When Mergili and Wajda, acting ostensibly as strangers to the

property, filed petitions for tax deeds and asserted they were assignees of the certificates of purchase, they were misrepresenting a jurisdictional fact because they were not legally assignees of the certificates of purchase. As previously noted, since Mergili and Wajda were actually acting for Dovenmuehle when they acquired the certificates of purchase, such acquisition, as a matter of law, constituted a redemption of the property and not an assignment. (See *Stinson v. Connecticut Mutual Life Insurance Co.* (1898), 174 Ill. 125, 51 N.E. 193; *Lomax v. Gindell* (1886), 117 Ill. 527, 7 N.E. 483; *Ragor v. Lomax* (1887), 22 Ill. App. 628.) Since Mergili and Wajda were redeemers and not assignees and since they were actually acting for Dovenmuehle's benefit so that Dovenmuehle could acquire the tax deeds and use them to destroy the interests of all the mechanics' lienholders, they were not permitted to file petitions for tax deeds. To have asserted that they were assignees and to have made themselves appear before the court as strangers to the property rather than as representatives of Dovenmuehle was to commit fraud in procuring the court's jurisdiction, and such fraud renders the order entered based on their petitions void.

Of course, since the order directing that tax deeds should be issued was void based on the alleged facts of this case, the issues concerning bar have no application. (*In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335.) Also, it cannot be argued that the tax deed case presented an area of questionable jurisdiction in which the tax court knew the truth of the matter and ruled it had jurisdiction. It is clear from the tax deed proceedings that the court never actually ruled that Dovenmuehle, and thus Mergili and Wajda, was entitled to file a petition for tax deeds even though Dovenmuehle was a mortgagee. Only some of the facts concerning Dovenmuehle's relationship with Chicago Title and Mergili and Wajda were revealed to the court and no one pursued the issue. From the face of the record of the tax deed proceedings, it appears that the tax court entered orders directing that tax deeds be issued based on the fraudulent assumption put forth by Mergili and Wajda that they were still strangers to the property with no intent of acquiring the tax deeds for Dovenmuehle's benefit.

██ Finally, Chicago Title cannot argue that Waner had a duty to discover the fraud in the tax deed proceedings and present the issue to that court merely because it had notice of the tax deed proceedings. Tax deed proceedings are special summary proceedings to determine whether the petitioner has met the requirements of law which entitle him to tax deeds. Waner was not a party defendant in the traditional sense to those proceedings. The only reason a party such as Waner would have had to file an appearance and an objection to the petitions for tax deeds was if it had believed it had a legitimate reason for preventing the deeds from

being issued. From the face of the notice of the proceedings that Waner received, Mergili and Wajda were two strangers to the property entitled to tax deeds. Thus, Waner had no reason to file an appearance and enter an objection because it did not know that Mergili and Wajda were actually acting for Dovenmuehle.

Thus, we hold that, based on the alleged facts in this case, the motion to dismiss Waner's mechanics' lien claims was improperly granted. Accordingly, we reverse the order dismissing Waner's claims and remand for further proceedings.

Reversed and remanded.

JOHNSON, J., concurs.

Mr. JUSTICE JIGANTI dissenting:

The plaintiffs in this proceeding to foreclose on mechanics' liens collaterally attack the judgment order that had been previously issued in a tax sale proceeding. Pursuant to the judgment order in the tax sale proceeding, the county clerk issued a tax deed. This court holds that the court that issued the judgment directing the issuance of the tax deed was without jurisdiction because the court's jurisdiction was procured through fraud.

*Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 344 N.E.2d 468 stated explicitly that a tax sale proceeding is *in rem* and not *in personam* and that the court acquires jurisdiction over the land when the county collector makes his application for judgment and order for sale. The court in the tax sale proceeding obtained jurisdiction in that manner and consequently any alleged fraud would not deprive it of jurisdiction. The remedy for the plaintiffs in this mechanics' lien foreclosure action was by way of direct appeal in the tax sale proceedings or through the use of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72.) It is not appropriate to attack the judgment in a collateral proceeding. I would affirm the judgment.