# Illinois Official Reports

## Appellate Court

*In re Application of the County Treasurer & ex officio County Collector*,
2017 IL App (4th) 160707

| | |
|---|---|
| Appellate Court Caption | *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF JERSEY COUNTY (Dealers Service, Inc., Petitioner-Appellant, v. Kari L. Ray; Hunter, LLC; Hunter Contracting and Development, Inc.; David J. Ray; and Maag Law Firm, LLC, Respondents-Appellees). |
| District & No. | Fourth District<br>Docket No. 4-16-0707 |
| Filed | June 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 16-TX-1; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Van-Lear P. Eckert, of Law Office of Van-Lear P. Eckert, PC, of Belleville, and Mark C. Goldenberg, of Goldenberg Heller Antognoli & Rowland, P.C., of Edwardsville, for appellant.<br><br>Phillip H. Hamilton, of Farrell, Hamilton & Julian, P.C., of Godfrey, for appellee Kari L. Ray.<br><br>Thomas G. Maag, of Maag Law Firm, LLC, of Wood River, for other appellees. |

Panel JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Steigmann and Knecht concurred in the judgment and opinion.

## OPINION

¶ 1    Petitioner, Dealers Service, Inc., appeals the trial court's dismissal of its petition for the issuance of a tax deed. It argues the court erred in finding it was ineligible to obtain a tax deed due to interests it held in the property. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3    In January 2016, Dealers Service filed a petition for tax deed with respect to three parcels of real estate in Jersey County. It alleged that, in November 2013, an entity named Sabre Investments (Sabre) purchased the 2012 delinquent real estate taxes for the property at an annual tax sale and was issued two certificates of purchase. In April 2015, Sabre assigned its interest in the certificates of purchase to Dealers Service "for the consideration of $10 each." Dealers Service further alleged it had sent notice to the occupants, owners, and interested parties, but the property at issue had not yet been redeemed. The redemption period was set to expire on May 4, 2016. Dealers Service asked the trial court to find that it fully complied with the procedures necessary for the issuance of a tax deed and that, in the event redemption did not occur, the court enter an order finding it was entitled to receive title to the property in fee simple.

¶ 4    Thereafter, two motions to dismiss Dealers Service's petition were filed by parties with interests in the property (collectively referred to as respondents). In April 2016, Kari L. Ray filed a combined motion to dismiss the petition for tax deed pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). She claimed a marital interest in the property at issue "by virtue of a divorce she filed," which was consolidated with a foreclosure action (case No. 15-CH-29) involving the property "and a *lis pendens* filed against the property." Relevant to this appeal, Kari argued that equity prohibited Dealers Service, as a lienholder on the property at issue, from obtaining a tax deed to the property. To support her argument, she cited *In re Application of Boone County Collector*, 131 Ill. App. 3d 939, 943, 476 N.E.2d 800, 803 (1985) (hereinafter *Candlewick*), wherein the Second District held "a lienor may not obtain a tax deed and thereby cut off the interest of other lienors or mortgagees." Kari asserted Dealers Service was a lienholder and mortgagee of the property and alleged it had "filed a [c]omplaint for [f]oreclosure against the same property" in the Jersey County circuit court (case No. 15-CH-29).

¶ 5    In May 2016, the second motion to dismiss Dealers Service's petition was filed by Hunter, LLC; Hunter Contracting and Development, Inc.; David J. Ray; and the Maag Law Firm. They asserted dismissal was appropriate pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)) on the same basis alleged by Kari.

¶ 6    In response to the motions to dismiss, Dealers Service acknowledged that it had a mortgage against the property dated March 4, 2013, and recorded on April 2, 2013; a lien against the property by virtue of an assignment of judgment lien dated May 18, 2015, and recorded on

May 21, 2015; and "a lien against the property by virtue of purchasing the interest of Citizens Community Bank against the property under a [m]ortgage dated [and recorded on] April 23, 2009." (Neither party alleged, nor does the record reflect, the date on which Dealers Service obtained Citizens Community Bank's interest in the property). However, it argued *Candlewick* was inapplicable to the underlying proceedings because it was brought under a statute that was no longer in effect. Specifically, it noted the Revenue Act of 1939 (Revenue Act) (Ill. Rev. Stat. 1983, ch. 120, ¶ 482 *et seq.*) in effect at the time *Candlewick* was decided, was repealed and recodified as the Property Tax Code (Tax Code) (35 ILCS 200/1-1 *et seq.* (West 1994)). Pub. Act 88-455 (eff. Jan. 1, 1994). Dealers Service maintained that current provisions of the Tax Code—addressing annual tax sale procedures (35 ILCS 200/21-190 to 21-255 (West 2014))—were silent as to "an interested party's ineligibility to bid on delinquent taxes."

¶ 7 Dealers Service also maintained that because it held no interest in the property on January 1, 2012, the first year the taxes on the property at issue were delinquent, it was "not restricted from buying [the delinquent] taxes on the *** property or [p]etitioning [the circuit court] for a [t]ax [d]eed." It argued that "whether one is an interested party is measured by whether their interest attached on January 1 of the first year for which the delinquent taxes were sold." To support its argument, Dealers Service cited *In re Application for Tax Deed*, 269 Ill. App. 3d 477, 481, 646 N.E.2d 621, 623 (1995) (hereinafter *Bailey*), for the proposition that "the party who owned the property as of January 1 of any given year is the owner for purposes of taxation."

¶ 8 In September 2016, the trial court entered a written order granting the motions to dismiss Dealers Service's petition for a tax deed. The court relied on *Candlewick*, noting "Illinois continued to rely upon" the proposition set forth in that case after 1994, when the Revenue Act was repealed and recodified under the Tax Code. See *Goldberg v. Michael*, 328 Ill. App. 3d 593, 600, 766 N.E.2d 246, 252 (2002) ("it is against public policy for [a lienholder] to purchase a tax certificate, as it cuts off claims of other lienholders" (citing *Candlewick*, 131 Ill. App. 3d at 941)).

¶ 9 This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11 On appeal, Dealers Service argues the trial court erred in granting respondents' motions to dismiss its petition for a tax deed. It agrees it had interests in the property as a mortgagee and lienholder. However, like it did before the trial court, Dealers Service maintains that because its interests in the property did not exist until after January 1, 2012, "the year for which the delinquent taxes were sold," it was neither prohibited from purchasing the delinquent taxes nor obtaining tax deeds on the property.

¶ 12 "A motion to dismiss under section 2-619 admits the sufficiency of the complaint, but asserts affirmative matter that defeats the claim." *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 40, 32 N.E.3d 583. Specifically, section 2-619(a)(9) provides for dismissal when the claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). "In ruling on the motion, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18, 53 N.E.3d 1. Whether dismissal is appropriate under section 2-619 is subject to *de novo* review. *Id.*

¶ 13        Here, we find no error in the trial court's dismissal of Dealers Service's petition for a tax deed. In *Candlewick*, 131 Ill. App. 3d at 940, 476 N.E.2d at 801, the Second District addressed "whether a lienholder, because of its interest in the property, is precluded from obtaining a tax deed to the property." There, following a tax sale, a homeowner's association filed petitions for tax deeds as the holder of tax purchase certificates on two lots. *Id.* at 941, 476 N.E.2d at 802. The trial court denied the petitions because the homeowner's association "was a [lienholder] of record on the date of the tax sale," and it held the association's "tax purchases were actually tax payments." *Id.* The homeowner's association appealed. *Id.*

¶ 14        Ultimately, the Second District affirmed the trial court's denial of the petitions for tax deeds, finding the homeowner's association's interest in the property prohibited it from taking title to the property. *Id.* at 943, 476 N.E.2d at 803. In so holding, the court stated several Illinois cases "held that an owner or mortgagee, because of its interest in the property and their obligation to pay the taxes on it, may not purchase the property at a tax sale and thereby cut off the interest in the property of the other party." *Id.* at 941, 476 N.E.2d at 802. It also found the great weight of authority in the United States provided the same with respect to a lienor. *Id.* The court stated as follows:

         "The rationale for this rule is that equity regards the land as a common fund for the payment of all liens and mortgages and it would be inequitable and a fraud for one lienor to acquire title to the land by a tax sale and use it to destroy the claim of another lienor or mortgagee. The lienor is authorized to redeem from the tax sale, and equity will not allow him to acquire the title for an inconsiderable sum when he was authorized to remove the trifling incumbrance by redemption. Equity will relieve against such oppression and teach the grasping creditor moderation in his demands, and that he cannot destroy others to build up his own fortunes." *Id.* (citing *Koch v. Kiron State Bank*, 297 N.W. 450 (Iowa 1941)).

The court further noted as follows:

         " 'The law of tax sales is designed to give strangers to the property a speedy method of acquiring merchantable title to the property so the property can get back into the stream of commerce so that future taxes can be collected. [Citation.] It is not designed to be a method by which a party with a *pretax sale interest* in the property can forego the payment of the taxes, allow the property to be sold for taxes, and then acquire it for a minimal cost so that party can raise its previous interest above all other previous interests.' " (Emphasis added.) *Id.* at 943, 476 N.E.2d at 803 (quoting *Vulcan Materials Co. v. Bee Construction Co.*, 101 Ill. App. 3d 30, 38, 427 N.E.2d 797, 803 (1981), *rev'd on other grounds*, 96 Ill. 2d 159, 449 N.E.2d 812 (1983)).

¶ 15        The Second District noted that the homeowner's association argued relevant statutory provisions indicated a legislative intent that only the owner of property was prohibited from purchasing at a tax sale. *Id.* However, the court rejected this argument, finding it could not be said that an owner of property was the only party responsible for delinquent taxes. *Id.* at 944, 476 N.E.2d at 804. It held a lienholder or mortgagee had the right to pay or redeem the taxes and, thus, was also responsible for the payment of delinquent taxes "if it wishe[d] to protect its interest in the property." *Id.* at 944-45, 476 N.E.2d at 804.

¶ 16        Here, the underlying tax deed proceedings present a similar situation as described in *Candlewick*. Dealers Service admittedly held a pretax sale interest in the property at issue. Specifically, the record shows it had an interest in the property through a mortgage dated

March 4, 2013, and recorded on April 2, 2013, while the tax sale through which the delinquent 2012 taxes were sold did not occur until November 2013. Despite its pretax sale interest, Dealers Service elected not to make a payment of taxes on the property to protect its interest, allowed the property to be sold for taxes, acquired the tax certificates on the property for a minimal sum ($10 each), and attempted to obtain tax deeds, thereby raising its previous interest above all other previous interests.

¶ 17   On appeal, Dealers Service does not dispute that the equitable principle set forth in *Candlewick* would generally apply to the underlying tax deed proceedings. Rather, it argues *Candlewick* is inapplicable to the specific facts presented since its own interest in the property was not present on January 1, 2012, "the first year for which the delinquent taxes were sold." To support its contention, Dealers Service relies on *Bailey*, 269 Ill. App. 3d at 481, 646 N.E.2d at 623, wherein the Fifth District held that "the party who owned the property as of January 1 of any given year is the owner for purposes of taxation." Dealers Service maintains *Candlewick* does not address the issue of timing, *i.e.*, the question of when a mortgagee or lienor becomes an interested party for purposes of a tax deed proceeding, and that *Bailey* is the only case to address the issue.

¶ 18   We disagree with Dealers Service's contention on appeal. First, *Candlewick* does address timing, as its discussion indicates that a mortgagee's or lienholder's *pretax sale interest* in property is what prohibits it from obtaining a tax deed. *Candlewick*, 131 Ill. App. 3d at 943, 476 N.E.2d at 803. Second, we find *Bailey* does not address the precise issues presented by this appeal and is not relevant to its disposition.

¶ 19   In *Bailey*, Hall was the owner of a parcel of land that was subdivided into four lots. *Bailey*, 269 Ill. App. 3d at 478-79, 646 N.E.2d at 622. In April 1990, Hall sold lot 4 to Bailey, and the parties agreed that lot 4 constituted 38% of the total tax bill. *Id.* at 479, 646 N.E.2d at 622. "Hall was to pay the 1990 taxes due and payable in 1991, and Bailey was to reimburse Hall for 38% of the entire 1990 tax bill." *Id.* Hall, however, failed to pay the taxes associated with all four lots, which had all been included in the same tax bill, and they were sold at a delinquent tax sale, with a tax sale certificate being issued to Pier Company. *Id.* Fearing the loss of lot 4, Bailey purchased the tax sale certificate from Pier Company and notified Hall that he would file a petition for a tax deed on lots 1, 2, and 3 if the taxes were not redeemed. *Id.* Hall did not redeem, and Bailey filed a petition for a tax deed. *Id.* Hall filed an objection to the petition and later redeemed the property. *Id.* The trial court entered judgment in Bailey's favor, ordering Hall, as the redeeming party, to pay Bailey reasonable expenses and attorney fees. *Id.* at 480, 646 N.E.2d at 622-23. In so holding, it found Bailey held no " 'ownership interest' " in the property relative to the payment of the 1990 taxes. *Id.* at 479, 646 N.E.2d at 622.

¶ 20   Hall appealed, arguing the tax-fraud statute prohibited the purchase of a tax-sale certificate by Bailey due to Bailey having an interest in the property. *Id.* at 478, 646 N.E.2d at 622. In resolving the matter on appeal, the Fifth District stated the "crux of the case" stemmed "from the question of ownership of lot 4." *Id.* at 480, 646 N.E.2d at 623. It noted Hall argued "the important time of ownership [was] at the purchase of the tax-sale certificate by Bailey," while Bailey argued "the significant time of ownership [was] January 1 in the year when delinquent taxes were the impetus for the tax sale." *Id.* The court sided with Bailey, finding Hall was the owner of all four lots for purposes of the taxes owed in 1990. *Id.* at 481, 646 N.E.2d at 623.

¶ 21   In reaching its decision, the Fifth District noted that under the Revenue Act (the predecessor to the Tax Code), " '[t]he owner of real property on January 1 in any given year

- 5 -

shall be liable for the taxes of that year.' " *Id.* (quoting 35 ILCS 205/27a (West 1992)). Further, it set forth the definitions of "ownership interest" and "nonownership interest" in the Revenue Act (which are nearly identical to definitions contained within the current version of the Tax Code (35 ILCS 200/21-285 (West 2014))), stating as follows:

> "Nonownership interest is defined as:
>
> > 'any interest in real property other than a contingent interest and other than an ownership interest as defined in this Section, including without limitation a mortgage, equitable mortgage or other interest in the nature of a mortgage, leasehold, easement or lien.' [Citation.]
>
> Petitioner's interest, if any, is not a nonownership interest, but an ownership interest. Ownership interest is defined as:
>
> > 'any title or other interest in real property, including without limitation any beneficial interest in a land trust, the holder of which is considered to be the owner of such real property for purposes of taxation under Section 27a of [the Revenue] Act.' [Citation.]" *Bailey*, 269 Ill. App. 3d at 480-81, 646 N.E.2d at 623 (quoting 35 ILCS 205/235d(a)(1), (a)(2) (West 1992)).

¶ 22      The Fifth District also rejected an argument by Hall that Bailey committed fraud under the Revenue Act by acquiring a tax sale certificate while having an interest in the property. *Id.* at 481, 646 N.E.2d at 623. It stated "[i]ntent [was] an important factor when claiming fraud," and although "Bailey knew he had purchased the tax-deed certificate and that he had an ownership interest in lot 4," there was "nothing in the record that would indicate that his intent was to defraud either the County *** or Hall." *Id.* at 481, 646 N.E.2d at 623-24.

¶ 23      Here, we find *Bailey* inapplicable to the current case, as it specifically addressed only the timing related to ownership interests and a property owner's liability to pay taxes. We note the Tax Code contains similar language to the portions of the Revenue Act cited in *Bailey*. In particular, section 9-175 of the Tax Code (35 ILCS 200/9-175 (West 2014)) provides that "[t]he owner of property on January 1 in any year shall be liable for the taxes of that year." However, neither the Tax Code nor *Bailey* speak to the issue presented by this case regarding when an interest in property obtained through a mortgage or lien, *i.e.*, a nonownership interest, must be obtained to preclude the mortgagee or lienholder from being granted a tax deed to the property. Thus, we find the holding in *Bailey* is simply not dispositive to the outcome of this case and it does not warrant reversal of the trial court's decision.

¶ 24      To further support its contention as to timing, Dealers Service cites section 21-275 of the Tax Code (35 ILCS 200/21-275 (West 2014)), which addresses the requirements for an application for a certificate of purchase in the context of a scavenger sale. At a scavenger sale, property may be sold for "less than the full amount of taxes, special taxes, special assessments, interest, penalties and costs for which judgment has been entered" on the property. 35 ILCS 200/21-260 (West 2014). To purchase property at a scavenger sale, the potential buyer must complete an "application for certificate of purchase," affirming he or she "has not bid upon or applied to purchase any property at the sale for a person who is the party or agent of the party who owns the property or is responsible for the payment of the delinquent taxes." 35 ILCS 200/21-265(a)(1) (West 2014).

¶ 25    Dealers Service notes that section 21-275 of the scavenger sale provisions contains a sample form for an application for a certificate of purchase and that the form sets forth the following language:

> "3. Neither I (we) nor any person or firm identified in the registration submitted to the Treasurer of . . . . . . . . . . County was an owner or agent of an owner, mortgagee or agent of a mortgagee, lienholder or agent of a lienholder, holder of beneficial interest or agent of a holder of a beneficial interest in or of any property identified on the schedule(s) attached to this application *on January 1st of any years for which taxes were delinquent at the time of my (our) bid(s) described in the schedule(s)."* (Emphasis added.) 35 ILCS 200/21-275 (West 2014).

It argues that, although the underlying proceedings involved an annual tax sale rather than a scavenger sale, the aforementioned statutory language relative to scavenger sales indicates that the legislature intended January 1 of the year for which taxes are delinquent to be *the* relevant time at which to determine whether an individual or entity has any interest—ownership or nonownership—in property.

¶ 26    Again, we disagree. Although section 21-275 contains the paragraph and language referred to by Dealers Service, it also states as follows:

> "4. Neither I (we) nor any person or firm identified in the registration submitted to the Treasurer of . . . . . . . . . . County was an owner or agent of an owner, mortgagee or agent of a mortgagee, lienholder or agent of a lienholder, holder of a beneficial interest or agent of a holder of a beneficial interest in or of the property identified on the schedule(s) attached to this application *at the time of the bid(s)* described in the schedule." (Emphasis added.) *Id.*

This additional language in the sample form does not contain the same "January 1" language and indicates that the date of a tax sale is also an appropriate time for determining whether an interest in property exists. Therefore, we decline to interpret the statutory language as Dealers Service suggests.

¶ 27    Here, we find the equitable principle set forth in *Candlewick* applies to the facts presented in this case and the trial court committed no error in granting respondents' motions to dismiss.

¶ 28                                   III. CONCLUSION
¶ 29    For the reasons stated, we affirm the trial court's judgment.

¶ 30    Affirmed.